# NOVEMBER 4, 1942

## Elmer Ambrose v. The State.

No. 22148.  Delivered June 3, 1942.
On Motion to Reinstate Appeal June 24, 1942.
Rehearing Denied November 4, 1942.

The opinion states the case.

*Mat Davis,* of Gilmer, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

Conviction is for rape, punishment being five years in the penitentiary.

As it originally reached this court the transcript contained no judgment, no sentence, no notice of appeal, no order on the motion for new trial and no recognizance or appeal bond.

There is no excuse for any such carelessness in the preparation of records for appeal.

By supplemental transcript the omissions mentioned have been supplied. We find that appellant did not enter into recognizance during the term of court, but gave an appeal bond long after court adjourned, which bond is approved by the sheriff only. Art. 818 C. C. P. provides that before such bond "* * * shall be accepted and the defendant released from custody by reason thereof, the same must be approved by such sheriff and the court trying said cause, or his successor in office. When said bond is so given and approved, the defendant shall be released from custody."

Many cases are cited in Note 1 under the article mentioned in Vol. 3, Vernon's Tex. C. C. P., and under the same note in the Cumulative Pocket Part of the same volume, holding that an appeal bond approved by only the judge or sheriff is not a compliance with Art. 818 C. C. P., and is fatal to the appeal.

The appeal is dismissed.

### ON MOTION TO REINSTATE APPEAL.

GRAVES, Judge.

The numerous defects in this record have been remedied by supplemental transcripts, and the appeal is reinstated, and we will consider the same upon its merits.

It was alleged and proven that the girl Willie May Mitchell was a child, not then fourteen years of age, the appellant being shown to be her uncle, her mother's brother.

The testimony relative to the act of intercourse seems to be sufficient to show the guilt of appellant, he being content to rely upon evidence of an alibi, which was evidently not believed by the jury.

The bills of exceptions offered by appellant's attorney, with slight exceptions, were qualified by the trial court in such manner that same were not acceptable to the appellant's attorney, who excepted to such qualification, whereupon in each instance the court prepared his own bill in lieu thereof, appel-

lant's attorney not availing himself of a bystanders' bill. We then have before us such bills prepared by the trial court.

Bill of exceptions No. 1 complains of the overruling of a motion for a continuance because of the absence of the witness Mrs. Jim Scott who was sick and unable to attend the trial hereof. Appellant says that he expected to offer as a defense herein that Earl Mitchell, the step-father of the prosecuting witness, was the person who had an act of intercourse with this girl, and that the appellant was not such person. The testimony he expected to elicit from Mrs. Scott was:

"That Agnes Mitchell, wife of Earl Mitchell, came to her (Mrs. Scott's) house on or about the 20th day of March 1941, with a shot gun and told said witness that Earl Mitchell had gone crazy, and had been doing things for which she wanted him locked up."

This was the second trial of this cause, and on the first trial Mrs. Scott did testify as above outlined, which was supposed to be connected up with misconduct of Earl Mitchell with his step-daughter, but the bill states that no such connection was ever made, after three days of testimony, and that "No witness ever at any time accused Earl Mitchell of improper conduct with prosecutrix." We think such testimony above outlined, had Mrs. Scott been present, would not have been material nor admissible, and the court was correct in overruling such motion.

Bill of exceptions No. 2 complains of the fact that appellant was not served with a certified list of the special venire selected to try this cause one day before his case was set for trial. This bill was also qualified to such an extent that appellant excepted thereto, and the court prepared the court's bill which we now consider.

It is evident from the presented bill that appellant desired to quash the special venire because a copy of the same was not served upon him of the jurors *summoned* one day prior to the trial of the case. It appears from such bill that this case had been set for trial for January 15, 1942. That prior to said date the judge, the clerk and the sheriff, as well as the appellant, met in the court room and proceeded to draw the names for this special venire of 75 men; that at such time appellant as well as his attorney signed the following written agreement found in the statement of facts:

"Now comes Elmer Ambrose, defendant, in the above entitled and numbered cause, and Mat Davis, his attorney of record, and they and each of them hereby waive personal service on the veniremen drawn to try this cause on January 15, 1942, and agree and suggest to the sheriff of Upshur County, Texas, that notice to said veniremen be mailed to them by postal cards deposited in the United States mail."

We then find in the record a list of the 75 juror venire, showing same to have been issued on January 12, 1942, and therein the sheriff is directed to serve such list on appellant. We then find the testimony of appellant in the record relative to this point wherein he says that such list was served upon him about two days after the case was set, and more than one day before it went to trial. We, therefore, gather from the evidence that the reason offered for the quashing of this venire was because the jurors were not summoned in person by the sheriff but were telephoned to by him. The statute cited by appellant, Art. 601, C. C. P., does say:

"No defendant in a capital case shall be brought to trial until he has had one day's service of a copy of the names of persons summoned under a special venire, except where he waives the right or is on bail. * * *."

We think it is shown that appellant's agreement, signed by both himself and his attorney, amounted to a waiver of personal service upon the veniremen, and his own statement shows proper service upon him of a copy of such venire. We see no error evidenced in such bill.

Bill of exceptions No. 3 is another of the trial court's bills, and is based on the court's failure to grant a continuance because appellant's attorney was engaged in a final settlement of an important civil case, and desired to settle same by an agreed judgment whereby a large sum of money would go to certain needy persons as well as a substantial fee to such attorney, and the attorney desired a postponement or continuance of this criminal cause in order that he might prepare and have entered the proper orders in such civil cause. The trial court's bill shows that upon request of the appellant's attorney, and while the selection of this jury was being had, the court suspended proceedings in this cause and entered the proper orders in the civil cause, and all parties seemed to be satisfied with this dispatched

business, the attorney included. So we think this bill presents no error.

Bill of exceptions No. 5, prepared by the court, is based on the court's refusal to have the court reporter read to the jury the testimony of all the witnesses heard in this cause at a former trial thereof in which a mistrial was had. The court was correct in refusing such request. If the appellant's attorney had desired to offer any testimony given in the former trial different from that given by such witnesses in this trial, it was his duty to lay a predicate therefor, and then offer the contradicting testimony from the notes taken on the former trial. A trial burdened with all the testimony of both trials would be but a useless consumption of time, and lead to interminable confusion. We think the court was correct in denying such request.

Bill of exceptions No. 6 complains because it is therein alleged that the State failed to show a correspondence between the allegation and the proof in that the injured party is named in the indictment as Willie May Mitchell whereas her name was Willie May Page. The proof does show that her father's name was Page, and that was her true name, but it also shows that she was also known and called Mitchell, after her step-father's name, and that she was known and called by either name, and if she was known by either name the allegation was sufficient. See Branch's P. C., p. 238.

Bill of exceptions No. 7 complains because the trial court failed to sustain a challenge for cause to the prospective juror J. C. Bates on the ground that he had been presented as a prospective juror at a former trial of this cause. The bill before us states that the juror testified that he was summoned as a juror at the previous trial, but was not taken, nor had he heard anything of the facts, had formed no conclusions, and knew of no reason why he should not make a fair and impartial juror. He was peremptorily challenged by appellant's attorney, he having further challenges left at such time. We do not think that the mere fact that a juror had been presented, but not taken as a juror in a former trial, should, standing alone, disqualify such juror when again presented at a second trial.

Bill of exceptions No. 8 contains the exceptions to the trial court's charge, which do, among other things, complain of the trial court's failure to charge on "the issue of want of con-

sent," meaning thereby the lack of consent of the prosecuting witness to the purported act of intercouse.

It is observed that the indictment alleges that appellant made an assault upon Willie May Mitchell, a female under the age of eighteen years; it is also observed that the girl testified: "I will soon be 14 years of age," and no further testimony is found relative to her age. In such cases neither consent nor lack of consent enters into the case. She can not give her consent to an act of intercourse. See Branch's Penal Code, p. 995, Sec. 1775, and many cases there cited.

Bill of exceptions No. 8 also complains because of the court's failure to charge the jury that the prosecuting witness was an accomplice, and that her testimony in this cause must be corroborated before a conviction could be had of this appellant. This contention was based upon the fact that the prosecuting witness did not tell her mother and step-father about this complained of occurrence with appellant until three days after same took place. This girl's mother was in the hospital and gave birth to a baby, and came back to her home on Saturday; on the night previous the girl testified that appellant came into her room where she was in bed with a four-year-old sister, and tried to get her to come out to his, appellant's bed, and she refused to go. She then went to sleep, and in the nighttime she was awakened by appellant getting on top of her and penetrating her privates with his privates; that she tried to get out from under him but he held her, and hurt her with his privates; she holloed and tried to get away but could not. Her mother and step-father were not at home; she and her little brothers and sister and appellant were the only ones at home. Her mother and step-father came home the next day, but she was afraid they would whip her and she did not immediately tell them; appellant told her she "had better not tell it."

About three days after the time of this alleged occurrence the girl seems to have told her mother and step-father, and the matter was discussed in appellant's presence, the statement of facts showing his answer was "You ought to whip that kid," and the girl said "No use whipping me because you did do it." "He then said 'We sho' wouldn't catch him,' and he taken Harold (a little boy five years old) and run out across the cotton field," out the back of the house, and was seen in such cotton field by a neighbor who testified appellant said he had

missed the road, the direction in which appellant was going being opposite from that in which he was living.

About two weeks after the alleged date of this assault a physician examined the girl and testified that her hymen had been broken, evidencing a penetration of her female organ.

It is said that "if prosecutrix is alleged and proven to have been under the age of consent at the time the carnal knowledge of her was obtained, her failure to make outcry or to discover the offense will not defeat the State's case, consent being immaterial. Hamilton v. State, 36 Tex. Cr. R. 374, 37 S. W. 431; Ramsey v. State, 63 S. W. 875; Hill v. State, 77 S. W. 808." Branch's P. C. p. 1002, Sec. 1784.

We are familiar with the doctrine that where the prosecutrix failed to make an outcry, and where her testimony is capable of corroboration, or where such corroborating facts are disproved, it is necessary that her testimony be corroborated. See Lawson v. State, 17 Tex. App. 304; Arnett v. State, 40 Tex. Cr. R. 617; Cowles v. State, 51 Tex. Cr. R. 498, 102 S. W. 1128, but the gist of such decisions is that the circumstances of each case must be taken into consideration in determining the accompliceship of the female, as well as the reasons governing her in her failure to make outcry. According to this little girl's story, the mother had been in the hospital for eight days, evidently seriously ill in childbirth, the appellant having donated blood to the mother, his sister; the mother came home on Saturday, the girl keeping silent during Sunday, and finally telling her story on Monday in appellant's presence, and appellant entered no denial, save the statement "You ought to whip that kid," and then leaving under circumstances resembling flight. We do not think that under the admonition of appellant "You better not tell it," the outcry was made so late that this girl, who could not consent to this unnatural act, would be required to be corroborated. A child, under the law, not yet fourteen years old, doubtless did not know the seriousness of the matter complained of, and could not contemplate the results thereof with the same degree of knowledge as that of an older person.

We have carefully considered all bills not herein written upon, and find no error shown by the record.

The judgment is therefore affirmed.

ON MOTION FOR REHEARING.

DAVIDSON, Judge.

In his motion for rehearing, appellant cites no additional authorities—nor does he advance any new argument—to sustain his contentions, not contained in his brief which was before us when the case was disposed of originally. However, we have again reviewed the entire record, in the light of appellant's contentions, and remain convinced of the correctness of the disposition made of the case originally.

As another and additional reason why the action of the trial court in overruling the motion to quash the venire was not error, we note that neither the bills of exception nor the record as a whole reflects that any jurors were obtained from the list of venire so sought to be quashed. Nor does it appear that appellant was required to accept any objectionable juror, or that he exhausted any or all of the challenges which the law afforded him. The record does reflect that the venire was exhausted, and that talesmen were summoned by the sheriff. For aught this record shows, the jury that tried the appellant might have been obtained from the list of talesmen, rather than from the venire of which complaint was made. See: Williams v. State, 14 S. W. 388, 29 Tex. App. 89.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.