**Ralph HERNANDEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 845–82.**

Court of Criminal Appeals of Texas, En Banc.

April 20, 1983.

Rehearing Denied June 8, 1983.

Bill J. Klingemann, Seguin, for appellant.

Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant was convicted of the offense of rape of a child and punishment was assessed at sixteen years confinement in the Texas Department of Corrections. The Fourth Court of Appeals in San Antonio reversed and ordered an acquittal. The State in its petition for discretionary review argues that the San Antonio Court's reversal, based on failure to corroborate testimony of the victim, was error.

The salient facts developed at trial reveal: appellant was dating E____ G____ C____. E____ G____ C____ had an eleven year old daughter N____ C____. On April 28, 1978, the appellant forced N____ C____ to have sexual intercourse with him. The victim's mother E____ G____ C____ actively participated in the unlawful act. Appellant and the victim's mother were indicted for rape of a child. A plea bargain was reached with E____ G____ C____ and a severance was granted. In a trial before the court appellant was found guilty.

The Court of Appeals reversed appellant's conviction holding that the State had failed to satisfy the corroboration requirements of Article 38.07, V.A.C.C.P., which provides:

"A conviction under Chapter 21, Penal Code, is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within six months after the date on which the offense is alleged to have occurred. The court shall instruct the jury that the time which lapsed between the alleged offense and the time it was reported shall be considered by the jury only for the purpose of assessing the weight to be given to the testimony of the victim."

Our analysis of this situation begins with a determination of whether Article 38.07, supra, requires corroboration. The only evidence presented in the record suggesting that an outcry was made within six months relates to a letter which the victim wrote to her aunt. However, since this letter was not introduced into evidence and the date it was written was *not* established it fails to satisfy the statutory requirement.

Absent a timely outcry our attention is directed to determination of whether or not the testimony of the victim has been corroborated. In *Nemecek v. State,* 621 S.W.2d 404 (Tex.Cr.App.1980) this Court adopted the standard for corroboration under Article 38.07, V.A.C.C.P.

"We perceive no reason to require stronger corroboration of the testimony of a victim of sexual assault who has not made timely outcry than of an accomplice to a crime. *We therefore adopt the standard of corroboration under 38.14 and former 38.07 as the test of sufficiency of corroborating evidence under the present Article 38.07."* [1]

The standard is more explicitly defined in Nemecek, supra, as follows:

"Where accomplice testimony requires corroboration under Article 38.14, V.A.C.C.P., *the standard for sufficiency is that the corroboration tends to connect the defendant with the offense charged.* Similarly, under former Article 38.07, which required corroboration of the complainant in prosecution for seduction, the standard of corroboration explicit in the Article itself was evidence 'tending to connect the defendant with the offense charged.'"

Inquiry is therefore confined to determining whether or not any evidence was presented at trial which connects the appellant with the offense charged. The only other fact witness who testified during the State's case in chief was E___ G___ C___, the victim's mother and an accomplice as a matter of law. The victim's mother testified:

"Q. [PROSECUTOR]: Can you tell the court in your own words what happened on that particular evening?

"A. Well, see, I was about in—at the other end of the room, and I had a bed in the living room. And, at that time, Ralph called me up there to the living room. So N___ was there, and he was going to have sex with her.

"Q. Okay. What happened when you came into the room?

"A. Well, see, her feets were down; and he told me to put her feets up, so I did.

"Q. Okay. How was N___ laying at the time that you walked into the room?

"A. She was laying, just cradling in bed; that's all.

"Q. Did she have any clothes on?

"A. No.

"Q. Where was Ralph?

"A. He was in there.

"Q. Where was Ralph in relationship to N___?

"A. Well, he was about to have 'course with her.

"Q. He was about to have intercourse with her?

"A. Yes.

"Q. And, to your knowledge, did he have intercourse with her?

"A. Yes, he did."

\*   \*   \*   \*   \*   \*

"Q. Okay. After this incident happened, where Ralph had intercourse with N___, did he tell you to do anything concerning N___?

"A. Well, afterwards, yes.

"Q. What did he tell you to do?

"A. He said to get some birth control pills for her.

"Q. And why did he want you to give her birth control pills?

"A. So she wouldn't get pregnant when she was—started her period.

(Re-Direct Examination)

"Q. Okay. E___, did he ever make you watch him have intercourse with N___ other than this first time?

"A. No.

---

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

"Q. Do you know whether or not he did have intercourse with N____ other than this first time?

"A. Yes, he did.

"Q. Do you have any idea as to about how many occasions?

"A. Well, I could say it was more than three times.

"Q. Okay. Do you know for sure whether you were always aware of all of the times that he had intercourse with her?

"A. No, I wasn't aware, not all the time.

"Q. Okay. Now, this happened at the house—the first occasion that we talked about, this happened at the house where you were living on Mountain Street; is that correct?

"A. Yes, ma'am."

(Re-Cross Examination)

"Q. [DEFENSE ATTORNEY]: Mrs. C____, the County Attorney asked you if you saw them do this; and you testified no. Then the next thing she asked you was did you know if she did it several other times, and you testified yes.

"A. Yes, yes, I did.

"Q. Okay. But you said you never saw them do it.

"A. She said at the first time.

"Q. So you did not see it then?

"A. At the first time, yes, I did and when it—

"Q. Then you didn't see it?

"A. The first time, yes, I was aware of it. I saw it.

"Q. You were aware of it?

"A. I saw it.

"Q. Well, a few minutes ago, I asked you what you saw and what happened, and you told me you left the room.

"A. Yes, but that was after he—he was on top of her. That's when I left the room."

\*  \*  \*  \*  \*  \*

"Q. Okay. Well, my question is you did—you helped him. You held her feet.

"A. Well, I held her feets but not while he was having intercourse with her.

"Q. But you also said while ago you didn't see it.

"A. Well, how could it be possible that I didn't see him when he was doing it there, when he ordered me to leave the room?

The testimony of E____ G____ C____ was clearly sufficient to corroborate the earlier testimony of the victim. Assuming arguendo that an accomplice can not factually corroborate a victim who needs corroboration, the conviction still must be affirmed.[2]

The accomplice witness and mother of the victim presented sufficient evidence to support a conviction. However, her participation as an accomplice requires corroboration, per Article 38.14, V.A.C.C.P.:

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

\*  \*  \*  \*  \*  \*

"To test the sufficiency of the corroboration of the testimony of an accomplice from consideration and then examine evi-

---

2. It must be emphasized that the factual situation here presented is unique and does *not* amount to cross-corroboration. Typically E____ G____ C____ and N____ C____ would both be accomplices as a matter of law. However, by virtue of long standing opinions of this Court which have remained unaffected by subsequent statutory revisions, a rape victim is not an accomplice. *Soliz v. State,* 163 Tex.Cr.R. 508, 293 S.W.2d 662 (Tex.Cr.App.1956); *Fields v. State,* 147 Tex.Cr.R. 540, 182 S.W.2d 815 (Tex.Cr.App.1944); *Womack v. State,* 145 Tex. Cr.R. 551, 170 S.W.2d 478 (Tex.Cr.App.1943); *Ambrose v. State,* 145 Tex.Cr.R. 1, 165 S.W.2d 188 (Tex.Cr.App.1942); *Lucas v. State,* 86 Tex. Cr.R. 439, 216 S.W. 396 (Tex.Cr.App.1920); *Battles v. State,* 63 Tex.Cr.R. 147, 140 S.W. 783 (Tex.Cr.App.1911); *Hamilton v. State,* 36 Tex. Cr.R. 372, 37 S.W. 431 (Tex.Cr.App.1896).

dence of other witnesses to ascertain if there be any inculpatory evidence or evidence of an incriminating character which tends to connect the accused with the commission of the offense. If there is such evidence, the corroboration is sufficient, otherwise it is not." *Infante v. State,* 612 S.W.2d 603 (Tex.Cr.App.1981).

Since the victim's testimony is being examined in light of Article 38.14, V.A.C.C.P., rather than Article 38.07, the six month "outcry" rule is inapplicable. Our sole inquiry then becomes whether the testimony of the victim *tends to connect the [appellant] with the commission of the offense* rather than whether it is sufficient to convict. At trial the victim testified:

"Q. [PROSECUTOR]: What did Ralph do after he got on top of you, N——?

"A. He—he put his private thing in mine.

"Q. Okay. Then can you tell me what else happened that night? N—— did it hurt when Ralph put his private thing into you?

"A. Yes.

"Q. Did it hurt a little bit or a whole lot?

"A. A bit and—a little bit and sometimes it didn't.

"Q. Okay. Did you bleed any that night when he did that?

"A. A little.

"Q. Okay. Now the, your mother was present when this happened; is that right?

"A. Uh-huh.

"Q. Okay. Did this happen anytime again after that first night?

"A. (Witness nods head.)

"Q. How many times?

"A. Several times.

"Q. Did you overhear Ralph tell your mother anything after this night that it happened?

"A. Yes.

"Q. What did you overhear Ralph tell your mother?

"A. It was about some birth control pills.

"Q. Okay. Can you tell the Court exactly what he said?

"A. He said that E—— and—he had told E—— about the birth control pills because E—— and them were thinking for Ralph to put some sperms in me so they could give me birth control pills."

(Cross-Examination)

"Q. You went to school. Okay. At the time—you say—tell me again what Ralph did?

"A. He put his private thing in mine.

"Q. What does that mean?

"A. That means he had sex with me."

\* \* \* \* \* \*

"Q. How do you know what this was that he did to you?

"A. Because he used to—he used to tell me that it was going to be for an experiment, something like that.

"Q. When did he tell you that?

"A. When he was going to do that to me.

"Q. Well, when was that that he told you that?

"A. The day that he did that."

\* \* \* \* \* \*

"Q. Okay. Did you—going back to that night that you've been talking about, did you bleed after he did this?

"A. Yes, a little.

"Q. Where did you bleed from?

"A. From my private stuff.

"Q. From your privates? Where is that? What part of the body?

"A. My middle part.

"Q. Whereabouts in your middle part?

"A. Inside.

"Q. Inside? Okay. And you bled there?

"A. Yes.

"Q. Okay. Now, you said Ralph did this to you several other times. Did you bleed those other times, too?

"A. No.

"Q. Just the first time? Just the first time?

"A. Yes.

"Q. How many other times do you think he did it to you? How many other times do you think he did it to you?

"A. Several.

"Q. Several? How many is several? Five? Six?

"A. He did it more than five."

\*  \*  \*  \*  \*  \*

"Q. Okay. Would you tell us what it is he did to you? Can you not answer the question? Can you answer the question, N____?

"A. Yes.

"Q. Okay. Would you answer it for me, please?

"A. He put his private thing in my private thing."

\*  \*  \*  \*  \*  \*

"Q. [DEFENSE ATTORNEY]: What exactly was it that Ralph did? You can't answer the question?

"A. He had sex with me."

\*  \*  \*  \*  \*  \*

"Q. What is it exactly that he did to you?

"A. He got on top of me, and he did it to me."

Clearly the testimony of the victim established the necessary connection between the appellant and the commission of rape of a child. Under Article 38.14, V.A.C.C.P., this is all that is legally required to corroborate the testimony of an accomplice. Thus, the testimony of accomplice E____ G____ C____ was effectively corroborated by her victim/daughter and was sufficient to convict.

The decision of the Court of Appeals is reversed and the cause is remanded for consideration of appellant's remaining alleged grounds of error.

TEAGUE and MILLER, JJ., concur in the result.

1. Emphasis was added by the State; all other emphasis is supplied throughout by the writer

OPINION CONCURRING IN THE JUDGMENT OF THE COURT

CLINTON, Judge.

■ The petition for discretionary review received from our State Prosecuting Attorney presented three grounds for review; though it was granted without restriction, the opinion of the Court fails to address a threshold issue raised in the court of appeals by the State and now reiterated as its first ground for review, *viz:*

"(1) The Court of Appeals erred in holding that a *minor* victim, who, as a matter of law, can neither be prosecuted for nor consent to the sexual offense charged, must be corroborated under Art. 38.07, Vernon's Ann.C.C.P., if the victim did not report the crime to some person, other than the defendant, within six months of the offense." [1]

Convinced that resolution of that issue will clarify the application of Article 38.07, supra, and then dispose of all other questions in this cause, I propose to draw extensively from the petition to demonstrate that the *addition* of Article 38.07 to the Code of Criminal Procedure by Acts 1973, 64th Leg., p. 476, ch. 203, § 6, effective September 1, 1975, was meant to deal *only* with testimony of a victim of a sexual offense who, for one reason or another, was held to be an "accomplice witness" and, perforce, whose testimony must be corroborated.

Prior to January 1, 1974, Article 38.07, V.A.C.C.P., provided:

"In all prosecutions for seduction the female alleged to have been seduced shall be permitted to testify; but no conviction shall be had upon her testimony unless the same is corroborated by other evidence tending to connect the defendant with the offense charged."

In its opinion reversing the present conviction, a majority of the court of appeals (hereafter "the majority") states: "Prior to

of this opinion unless otherwise indicated.

its amendment by the Legislature in 1975, Article 38.07, supra, addressed only the offense of seduction." The majority then says: "In 1975, the 64th Legislature extended [Article 38.07's] requirement for corroboration to include a necessity for corroborating the testimony of [all] victims of all sexual offenses under Chapter 21, Penal Code, [footnote omitted] without regard to the victim's age, except in those cases where an outcry is made within six months after the date on which the offense is alleged to have occurred." *Hernandez v. State,* 636 S.W.2d 617, at 619 (Tex.App.1982 —San Antonio). The rest of the majority's opinion hinges upon the proposition that the Legislature "amended" Article 38.07, supra, in 1975.[2] With that premise, the majority is totally mistaken.

On January 1, 1974, the 1925 Penal Code was repealed and the 1973 Penal Code became effective. In repealing the 1925 Penal Code, former Articles 505–509, which dealt with the offense of "seduction," were specifically expunged from the statute books of this State. See 4 V.T.C.A. Penal Code, pp. 392–393. The 1973 Penal Code contained no law prohibiting the former offense of seduction. Therefore, on and after January 1, 1974, there was no offense of "seduction" prohibited by Texas law.

Moreover, at the time the Legislature repealed the 1925 Penal Code, it also specifically repealed Article 38.07, supra, which required that the testimony of the victim in a "seduction" case be corroborated. See 4 V.T.C.A. Penal Code, p. 396. Consequently, on and after January 1, 1974, and for a period of 20 months, up until September 1, 1975, when an entirely new Article 38.07 was enacted by Acts 1975, 64th Leg., p. 479, ch. 203, § 6, there was no Article 38.07 at all, much less one that could be amended.

However, based on the mistaken premise that the Legislature had merely "amended" the seduction-corroboration requirement of former Article 38.07, the majority came to the effective conclusion that the Legislature had made it more difficult to obtain convictions in sexual offense cases. That conclusion misapprehends the very purpose and effect of the Act.

Present Article 38.07 was a part of H.B. No. 284 of the Regular Session of the 64th Legislature.[3] The whole purpose of H.B. No. 284 was to make it less difficult to obtain convictions in sexual offense cases. The "Bill Analysis" prepared for the House Committee on Criminal Jurisprudence states, under the heading "Background Information," as follows:

> "It is felt that much of the problem associated with the reporting and prosecution of rape is that the present statutes discourage reporting and prosecution because of embarrassment to the victim and the difficulty in obtaining a conviction."

Prior to the enactment of present Article 38.07, this Court had held that the victim in a case where a nonconsent rape was alleged, who was over the age of consent, could, in effect, be an "accomplice witness" whose testimony was required to be corroborated. Thus, a woman over the age of consent, who claimed that she was raped, was required to be corroborated if consent were an issue and the woman failed to make an outcry or promptly report the outrage, unless there was a reasonable explanation for such failure. However, the corroboration rule did not apply if: (1) consent was not in issue or the victim was legally incapable of consenting; (2) the victim made an outcry or a prompt report of the outrage; or (3) there was a reasonable ex-

---

**2.** The panel opinion in *Vickery v. State,* 566 S.W.2d 624 (Tex.Cr.App.1978), as did the panel in the present case, assumed that the present version of Article 38.07 resulted because of "changes wrought by the 1975 amendment ..." 566 S.W.2d at 626. But, as shall be shown in the text, *post,* former Article 38.07 had been repealed for a total of 20 months before the socalled 1975 "amendment" became effective.

**3.** If there be any doubt as to whether the present version of Article 38.07 was an "amendment" of an earlier version of that statute, one need look only to § 6 of H.B. No. 284 itself which provides: "The Code of Criminal Procedure, 1965, as amended, is amended by adding an Article 38.07 to read as follows: [the text of present Article 38.07]."

planation for the failure to make an outcry or a prompt report of the outrage.

In those cases in which the victim was considered to be an "accomplice" witness, the victim was apparently considered to be an "accomplice" witness in the sense that that term is used in Article 38.14, V.A.C.C.P., and its predecessors. But when it came to the socalled "statutory" rape cases, the court could not find sufficient justification for any "legal" conclusion that the victim was an "accomplice" witness. Therefore, the Court held that such victims were not "accomplice" witnesses; and convictions could be had on their uncorroborated testimony whether outcry or prompt report were made or not. See, e.g., *Soliz v. State,* 163 Tex.Cr.R. 508, 293 S.W.2d 662 (1956); *Johnson v. State,* 449 S.W.2d 65 (Tex.Cr.App.1969).

Consequently, as applied to "statutory" rape cases, there was nothing for H.B. No. 284 to remedy, so far as any corroboration requirement was concerned. Prior law imposed no requirement of corroboration in such cases; convictions were easy enough to obtain; and, therefore, there was nothing to make "less difficult."

The majority of the court of appeals, however, has attributed an intention to the Legislature which would make convictions in "statutory" rape cases more difficult. Although no such requirement existed before, the majority says that the Legislature has now required corroboration in "statutory" rape or rape of a child cases where the victim does not inform some person, other than the defendant, of the alleged offense within six months after the date on which the offense is alleged to have occurred. In so doing, the majority has not only frustrated the intention of the Legislature to make convictions in sexual offenses less difficult to obtain; but it has also turned the statute on its head.

There is quite a difference between requiring that a witness be corroborated and eliminating a *former* requirement of corroboration. In 1975 the Legislature sought to eliminate a *former* corroboration requirement brought about by decisions of this

Court in some of the sexual offense cases, of which nonconsensual rape is but an example, where there was no outcry or prompt report but where the victim reported the offense to some person, other than the defendant, within six months of the offense. To say the contrary, as did the court of appeals' majority, is to turn a positively worded statute upside down and thwart the intent of the Legislature.

The Court has previously held that an alleged rape victim above the age of consent could be an "accomplice" witness, but it has *not* held, at least in recent times, that an alleged victim under the age of legal consent could be an "accomplice," either as a matter of law or fact. Therefore, since the latter victims are not "accomplices," they need not be corroborated under Article 38.14. We are entitled to attribute to the Legislature knowledge of such holdings in determining legislative intent to override them.

■ In the present case, the prosecutrix was eleven years old at the time of the offense and twelve years old at the time of trial. She could not be prosecuted for rape as an adult nor could she be certified by the juvenile court for prosecution. V.T.C.A.Penal Code, § 8.07. Moreover, the prosecutrix in this case was among those class of victims that some statutes, like those denouncing rape of child, are designed to protect. V.T.C.A.Penal Code, § 21.09, makes victims under 17 who have not previously engaged in promiscuous sexual or deviate sexual intercourse and those victims under 14, regardless of prior promiscuous sexual conduct, legally incapable of giving consent to sexual intercourse. Thus, they are not legally responsible for their own undoing and cannot be accomplice witnesses as a matter of law or fact. Surely, we cannot attribute to the Legislature an intention to protect a certain class of victims, such as children, on the one hand, and also attribute to that body an intention to make those same victims as criminally culpable as those persons against whom that protection is designed to shield.

Before the 1975 addition of Article 38.07 the Court held that the legislative distinc-

tion between children and older persons was a rational one. *Hohn v. State,* 538 S.W.2d 619, 622 (Tex.Cr.App.1976). Without compelling indicia that the Legislature intended to obliterate such a distinction founded in reason, I would hold that Article 38.07 embraces just those instances in which the victim has been considered an "accomplice witness" in the sexual offense, and no more.[4]

Since I reach the same result as the Court, I join its judgment.

ODOM and McCORMICK, JJ., join this opinion.

## OPINION ON APPELLANT'S MOTION FOR LEAVE TO FILE A MOTION FOR REHEARING

PER CURIAM.

■ A majority of the Court now adopts as the opinion of the Court in this cause the concurring opinion on original submission. Accordingly, to the extent of any conflict *Nemecek v. State,* 621 S.W.2d 404 (Tex.Cr.App.1980) is overruled.

Appellant's motion is denied.

---

4. Indeed, I believe we have already passed the time for reexamination of the legal fiction that a victim of sexual offenses may somehow become an "accomplice witness" to perpetration of the offense upon that victim. Asking "Can a woman be convicted of her own rape?" the State makes a strong argument to the effect that the victim of a rape is never an accomplice witness. However, I do not further address that matter here in view of my disposition of the threshold issue presented by the State.