James SCOGGAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–86–424–CR.

Court of Appeals of Texas,
Corpus Christi.

Aug. 28, 1987.

Rehearings Denied Sept. 30, 1987.

Scott A. Young, Minton, Burton, Foster & Collins, Austin, for appellant.

Grant Jones, Dist. Atty., Corpus Christi, for appellee.

Before NYE, C.J., and KENNEDY and SEERDEN, JJ.

## OPINION

NYE, Chief Justice.

A jury found appellant guilty of sexually assaulting a child and the trial court assessed punishment at six years imprisonment, probated for eight years, and a fine of $2,500.00

Appellant raises twenty-five points of error challenging the validity of a search warrant, the scope of the search, the admission of certain evidence seized in the search, and the sufficiency of the evidence. We find the evidence sufficient to sustain the conviction, but find that the seizure and admission of evidence not specifically described in the search warrant violates the Code of Criminal Procedure and therefore, requires a reversal and a new trial.

First, we must address the sufficiency of the evidence even though we reverse the conviction on another point, because if the evidence is insufficient, appel-

lant is entitled to an acquittal. *Selman v. State*, 663 S.W.2d 838 (Tex.Crim.App.1984).

Appellant, a high school music instructor, was indicted for engaging in sexual intercourse with SS, who was fifteen years old when the first act of sexual intercourse occurred. She testified that starting in January 1984 and continuing for approximately sixteen months, she and appellant engaged in between 200 and 300 acts of intercourse. The minor's testimony establishes all elements of the offense.

Appellant's challenge to the sufficiency is grounded in the defense of promiscuity. It is a defense to the offense alleged if the child was, at the time of the offense, fourteen years of age or older and had prior to the time of the offense engaged promiscuously in sexual activity. Tex.Penal Code § 22.011(d)(1) (Vernon Supp.1987).

SS testified that prior to January 1984 she had engaged in sexual intercourse with two boys. She described one of the boys as her "first serious boyfriend." She had sexual intercourse with him in December 1983. In the summer of 1983, SS engaged in sexual intercourse with another boy whom she did not "date" but had had a crush on since the third grade. In February 1983, SS and another boy took off their clothes. The two did not engage in sexual intercourse, but SS touched his sexual organ and he touched her breasts.

■ There is no evidence that SS had engaged in sexual relations with anyone other than the above boys prior to January 1984. Appellant relies on *Ormand v. State*, 697 S.W.2d 772 (Tex.App.—Corpus Christi 1985, no pet.), wherein we held that the defendant was entitled to an acquittal where he had established the defense of promiscuity as a matter of law. There we noted that the word "promiscuity" does not signify an isolated incident of sexual relations with one particular person, but denotes an indiscriminate grant of physical favors to persons of the opposite sex without any requirement of love. *Ormand*, 697 S.W.2d at 773. In the present case, SS engaged in sexual intercourse with two boys before the offense. The circumstances surrounding the relationships show that

the sexual acts were not "indiscriminate." Her admissions of having engaged in sexual activity with these two boys do not establish her promiscuity as a matter of law. There was sufficient evidence from which the jury could have found that SS was not promiscuous. Appellant's first point of error is overruled.

In his second point of error, appellant contends that the evidence is insufficient to support the conviction because SS failed to inform any person of the alleged offense within six months after the date on which it allegedly occurred.

At the time of the offense and trial, article 38.07 Tex.Code Crim.Proc.Ann. provided, in part:

A conviction under ... Section 22.011 ... is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person other than the defendant of the alleged offense within six months after the date on which the offense is alleged to have occurred. The requirement that the victim inform another person of an alleged offense does not apply if the victim was younger than fourteen years of age at the time of the alleged offense.

The issue here is whether an offense committed against SS (who was 15 years old) must be supported by evidence corroborating the victim's testimony.

■ Appellant recognizes that a similar issue was resolved adversely to him in *Hernandez v. State*, 651 S.W.2d 746 (Tex.Crim. App.1983). In that case, the Court of Criminal Appeals found that art. 38.07 did not apply to victims under the age of seventeen who had not previously engaged in promiscuous sexual or deviate sexual intercourse, and did not apply to those victims under fourteen years of age regardless of prior promiscuous sexual conduct. Appellant argues, however, that *Hernandez*, is not applicable to this case because art. 38.07 was amended following the *Hernandez* decision. The language added to the section was that "the requirement that the victim inform another person of an alleged offense does not apply if the victim was

younger than fourteen years of age at the time of the alleged offense."

The State argues that the amendment codified *Hernandez* as it applied to those victims under the age of fourteen, but remained silent as to those victims above fourteen but under seventeen years of age.

Prior to amendment, art. 38.07 (Acts 1975, 64th Leg., p. 479, ch. 203, § 6) allowed a conviction on the uncorroborated testimony of the victim if the victim cried out within six months. The text of art. 38.07 did not limit the outcry requirement to a certain category of cases. The Court of Criminal Appeals, however, determined that the outcry requirement of art. 38.07 applied only to those cases where corroboration had been required in the past. No corroboration had been required where the victim was between 14 and 17 and not promiscuous. The amendment does not require corroboration where none was needed in the past, but only codifies the holding in *Hernandez*. Accordingly, appellant's conviction is supportable on SS's own testimony even though she informed no one of the alleged offense, which allegedly occurred in January 1984, until May 1985. *See Hill v. State*, 663 S.W.2d 457 (Tex.Crim.App. 1984). We find that the evidence is sufficient to sustain the conviction. Appellant's second point of error is overruled.

Appellant's remaining points of error concern the sufficiency of the affidavit supporting the search warrant, the scope of the search, and the admissibility of evidence seized during the search of his apartment. Appellant complains that the search warrant was issued on an affidavit not supported by probable cause.

The affiant, Corpus Christi Police Officer Hugo Stimmler, stated the following facts in support of his request for a search warrant:

a. This affiant has received a sworn statement from Teresa Roberts, attached hereto as exhibit A, in which she states that [SS], a female child younger than 17 years of age told her that she had been engaging in acts of sexual intercourse since she was in the 9th grade with James Scoggan one of her teachers at King High School, and that James Scoggan had taken nude photographs of her which he kept at the above named place, and that he had purchased clothing for her.

b. This affiant has determined through independent investigation that James Scoggan is one of the teachers of [SS], and this affiant received from Teresa Roberts a card from "James" expressing romantic love for [SS] which she, Teresa Roberts, found with the possession of [SS].

Attached to the officer's affidavit is a lengthy statement from Teresa Roberts outlining her relationship with SS and her knowledge of certain facts relevant to this case. Appellant complains that the sworn statement of Teresa Roberts fails to establish probable cause: (1) that a specific offense had been committed; (2) that the specifically described property to be searched for constituted evidence of that offense, or evidence that a particular person committed that offense; and (3) that the property to be searched for was located at the particular place to be searched.

Appellant's specific complaint is that Teresa Roberts had no personal knowledge of any fact or circumstance that would support a search of appellant's apartment. He argues that all the facts relevant to probable cause were related to Teresa by SS, and that the information presented to the magistrate did not show SS to be a reasonably trustworthy source of information. Appellant summarizes the situation as one where the warrant was issued on the basis of "an affidavit which sets forth vague and unsubstantiated allegations of criminal conduct made by an individual who does not appear from the accompanying sworn statement to be completely trustworthy or reliable."

According to the sworn statement, Teresa Roberts was a teacher in Corpus Christi and had met SS approximately 6 weeks before she gave her statement to Officer Stimmler. Roberts had agreed to allow SS to live in her home because of a bad domestic situation in SS's family.

On Sunday, May 19, 1985, while Roberts was fixing dinner, SS became upset and started crying because her friend was angry with her. SS then confided in Roberts that her friend was a teacher and that they had been having sexual intercourse.

Roberts' statement then contains details of the relationship between SS and appellant, as told by SS. Along with information about their past activities, it contains information about SS's then-current argument with appellant. Roberts' statement then contains her own personal knowledge about threatening telephone calls placed to her home. These calls are consistent with SS's statements to Roberts about her fight with appellant.

█ The task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant. *Eisenhauer v. State*, 678 S.W.2d 947 (Tex.Crim.App.1984). In reviewing the sufficiency of the supporting affidavit, we use the totality of the circumstances analysis employed in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

Roberts' statement describes events she witnessed and information relayed to her by SS, an identified victim. Neither Roberts nor SS could be classified as "informers" in the sense of undercover officers or those involved in criminal activity.

█ When the affidavit contains information given by a named informant, and is sufficiently detailed, it is not infirm. See *Armstrong v. State*, 718 S.W.2d 686 (Tex. Crim.App.1985).

█ The information SS related to Roberts was specific, detailed, and consistent. The information was told to Roberts in confidence, and at a time when SS was emotionally consumed. In addition, the telephone calls to the Roberts home and the card from "James" expressing his love for SS provide some independent support for SS's story. We find that there is substantial evidence in the record from which

the magistrate could lawfully issue a search warrant. Appellant's twenty-fourth point of error is overruled.

█ Appellant next contends that property other than that specifically described in the search warrant was seized by the officers during the search, in violation of Tex.Code Crim.Proc.Ann. art. 18.01(d) (Vernon 1977), and that the admission of these non-described items requires reversal of his conviction. To this we must agree.

The warrant issued under Tex.Code Crim.Proc.Ann. art. 18.02(10) authorized *the seizure of photographs of nude minor females and clothing for minor females.*[1] During the search of the appellant's apartment, police seized magazines containing sexually explicit material, cut out advertisements for sexually explicit magazines and books, pornographic pamphlets and other books.

Appellant's motion to suppress alleged that contrary to the provisions of art. 18.-01(d), property or items other than those specifically described in the search warrant were seized during the search of his apartment. Appellant again objected at trial on this ground when State's exhibits one and six through twenty-six were offered. These objections were overruled.

On appeal, the State admits that the seized items were not described in the warrant. Instead, the State contends that the seizure of the items was proper under the plain view doctrine and relies on *Snider v. State*, 681 S.W.2d 60 (Tex.Crim.App.1984) and *Gonzalez v. State*, 677 S.W.2d 731 (Tex.App.—Corpus Christi 1984, no pet.). *Gonzalez* is not on point as that case involved a warrantless search.

In *Snider*, the issue was whether evidence (stolen property) seized during a search conducted under an admittedly valid search warrant was admissible if not described in the warrant. In *Snider*, the Court of Criminal Appeals relied on the plain view exception to the warrant requirement in upholding the legality of the seizure. At first blush, *Snider* would ap-

---

1. Emphasis supplied throughout.

pear to control the present case. However, a more comprehensive analysis reveals that *Snider* is not controlling. To understand why, it is necessary to quote the applicable Texas statutory provisions relating to the issuance of search warrants.

Tex.Code Crim.Proc.Ann. art. 18.02 provides that a search warrant may be issued to search for and seize the following:

(1) property acquired by theft or in any other manner which makes its acquisition a penal offense;

(2) property specially designed, made, or adapted for or commonly used in the commission of an offense;

(3) arms and munitions kept or prepared for the purposes of insurrection or riot;

(4) weapons prohibited by the Penal Code;

(5) gambling devices or equipment, altered gambling equipment, or gambling paraphernalia;

(6) obscene materials kept or prepared for commercial distribution or exhibition, subject to the additional rules set for by law;

(7) drugs kept, prepared, or manufactured in violation of the laws of this state;

(8) any property the possession of which is prohibited by law;

(9) implements or instruments used in the commission of a crime;

(10) property or items, except the personal writings by the accused, constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense; or

(11) persons.

Paragraph (10) was added to art. 18.02 in 1977. Acts 1977, 65th Leg., p. 640, ch. 237 § 2. Before being amended in 1977, art. 18.02 did not authorize searches for "mere evidence" of a crime. Accompanying the amendment to art. 18.02 was an amendment to art. 18.01. Acts 1977, 65th Leg., p. 640, ch. 237 § 1.

Art. 18.01(d) now provides:

*Only the specifically described property* or items set forth in a search warrant issued under Subdivision (10) of Article 18.02 of this code or property or items enumerated in Subdivisions (1) through (9) of Articles 18.02 of this code *may be seized.* Subsequent search warrants may not be issued pursuant to Subdivision (10) of Article 18.02 of this code to search the same person, place, or thing subjected to a prior search under Subdivision (10) of Article 18.02 of this code.

When arts. 18.01 and 18.02 were amended in 1977 by Senate Bill 156, a bill analysis accompanying the committee report from the House Committee on Criminal Jurisprudence explained that the amendments expanded the current law relative to the issuance of search warrants by allowing a warrant to be issued for items constituting evidence of an offense. In expanding the scope of matters which could be procured by a search, the bill also provided a safeguard that only the items specified in the warrant could be seized. The bill analysis and the language of art. 18.01(d) make clear that when a search warrant is issued pursuant to art. 18.02(10), *only the items specified may be seized.*

In the present case, State's exhibit 1, 6 through 18, 21, 22, 24, and 25 were not specifically described in the warrant. Exhibits 19, 20, 23, and 26 arguably were subject to seizure under the magistrate's authorization to seize photographs of nude minor females. However, the undisputed evidence offered at trial showed that the nude females which these photographs depicted were not minors.

The State's reliance on *Snider v. State*, 681 S.W.2d 60 (Tex.Crim.App.1984) is misplaced. The search warrant in *Snider* listed radio equipment that had been taken in a burglary. No radio equipment was found, but the searching officers discovered other items which had been taken in an unrelated burglary. While not specifically stated in the Court's opinion, the warrant presumably was not issued under 18.02(10), but under art. 18.02(1) which authorizes the search for property acquired by theft (or in any other manner which makes its acquisition a penal offense). Accordingly, *Snider*

is not in conflict with 18.01(d) or our holding in the instant case.

■ The general rule is that evidence not described in a valid warrant, but lawfully seized pursuant to the warrant, is admissible. *Matthias v. State*, 695 S.W.2d 736 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd). *See Herrera v. State*, 561 S.W.2d 175 (Tex.Crim.App.1978); *Oubre v. State*, 542 S.W.2d 875 (Tex.Crim.App.1976); *Chambers v. State*, 508 S.W.2d 348 (Tex.Crim.App.1974); *Phenix v. State*, 488 S.W.2d 759 (Tex.Crim.App.1973); *Schulbach v. State*, 474 S.W.2d 920 (Tex.Crim.App.1972). This is because police generally have a right to seize items in plain view when (1) the police have a right to be where they are, (2) the evidence is inadvertently discovered, and (3) it is immediately apparent to them that they have evidence before them.

Arts. 18.01 and 18.02, however, statutorily limit this general rule where the warrant is issued to search for *mere evidence* and the items discovered constitute mere evidence outside the scope of the warrant. Since its enactment in 1977, only one reported case even tangentially addresses the issue raised in this case. There, the San Antonio Court of Appeals found no error in officers returning to obtain a subsequent warrant to seize evidence they previously observed while executing an earlier search warrant. *Gordon v. State*, 640 S.W.2d 743 (Tex.App.—San Antonio 1982, no pet.). This did not take place in this case.

If, in executing the warrant, officers discovered incriminating evidence, the legislature decided that it was appropriate for officers to return to the magistrate for a probable cause determination, rather than vest that determination with the officers making the search.

The appellant's property which was not specifically described in the search warrant was seized in violation of art. 18.01(d).

■ Next we must address whether appellant has waived his right to complain about the admission of these items. Appellant testified at trial and admitted possessing the complained-of evidence in his apartment. Generally, where a defendant presents the same kind of evidence or testimony to which he had previously objected, the error is deemed to have been waived or cured by the defendant. *Simmons v. State*, 594 S.W.2d 760 (Tex.Crim.App.1980); *Nicholas v. State*, 502 S.W.2d 169 (Tex.Crim.App.1973). An exception to this general rule is where the defendant's admission of the same evidence is to rebut, destroy, or explain the effect of the evidence that has been erroneously admitted over proper and timely objection. *Sweeten v. State*, 693 S.W.2d 454 (Tex.Crim.App.1985); *Bush v. State*, 697 S.W.2d 397 (Tex.Crim.App.1985); *Thomas v. State*, 572 S.W.2d 507 (Tex.Crim.App.1978) (Opinion on State's Motion for Rehearing). In addition, the general waiver rule does not apply where a defendant testifies in order to overcome the impact of illegally obtained and improperly admitted evidence. This is because his testimony is tainted by the same illegality that renders the evidence inadmissible. *Sherlock v. State*, 632 S.W.2d 604 (Tex.Crim.App.1982). The objection to the evidence is not waived even if the defendant's testimony was not meant to solely meet, destroy, or explain the evidence. *See Sherlock v. State*, 632 S.W.2d at 606, fn. 1.

■ Appellant explained the photos of nude women found in his apartment as being photos of former girlfriends, all of whom were in their twenties or thirties. Appellant also explained that the pornographic books and literature had been stored in a locked box and that he had not opened the box in years. Under the holdings of *Maynard, Sherlock,* and *Thomas,* appellant did not waive his objections to the legality of the search. We also note that the State does not contend that appellant waived his objection to the search and admission of the evidence. We, therefore, turn to whether the admission of this evidence constitutes harmful error.

■ The test for harmless error is not whether a conviction could have been had without the improperly admitted evidence, but whether there is a reasonable possibility that the evidence complained of could

have contributed to the conviction. *Maynard v. State,* 685 S.W.2d 60 (Tex.Crim. App.1985); *Graham v. State,* 710 S.W.2d 588 (Tex.Crim.App.1986).

■ In determining whether there was harmful error in admitting improper evidence, the facts and circumstances of the individual case must be considered. *Becknell v. State,* 720 S.W.2d 526 (Tex.Crim. App.1986). In the present case, the sole issue was whether appellant had sexual intercourse with SS, a minor. Appellant testified that he never touched SS, while she testified that appellant had sexual intercourse with her 200–300 times. There was no "physical evidence" corroborating SS's allegations of sexual intercourse with appellant in January 1984. SS's testimony is not strong. In addition, her description of appellant's private parts and buttocks did not correspond with evidence of an agreed medical examination. Appellant's testimony generally amounts to a denial of sexual intercourse with SS, accompanied by various efforts to explain his whereabouts over the 16–month period. Appellant's efforts to establish his alibi were sometimes fraught with inconsistency, but he maintained his innocence throughout, arguing that no one would be able to accurately account for any 16–month period.

Appellant, who had dated SS's mother, assumed somewhat of a father-figure status to SS, and financially helped SS and her mother at various times. Evidence was introduced to show that SS wanted to get even with appellant who criticized her for dating an Italian sailor.

In determining the weight the State placed on the illegally seized evidence and therefore, the harm of the error, we turn to the State's closing jury argument, which included the following portions:

> His behavior, his calls to Music Mart, all these things, the books, all this shows the unnatural attraction he has for young girls. But that's not part of his life that everybody knows, is it? It's a part of his life that's secret. This is the secret of Mr. Socggan (sic) case. Mr. Scoggan knows how to keep a secret and he's done a magnificent job, just like he kept this pornography saved for years, locked in a box, saved in a carton. That's his little Pandora's box. That's his secret bunch of fantasies and desires. Not everyone knew about them.

> \* \* \* \* \* \*

> These items are found in the search of the apartment before she (SS) even talks to the police. And what do we find in the search of the apartment? The pornography, you will have that to take back to the room. It's going to tell you one thing in the world, it's going to tell you that this man had a secret desire to have sex with young girls. That's what it's going to tell you and that's why I offered it into evidence. It's also going to tell you he was sexually active in that apartment, that he had a vibrator laying by the edge of his bed, not under a brick from wherever, Cisco, but by the edge of his bed, a vibrator which he says he never saw before in his life.

> \* \* \* \* \* \*

> The materials you have up here tell you what he wanted, what was in his mind. It tells you what his desires were, what his secret desires were, and the people—when you have secret desires, that's what you want to get, that's what you want.

■ The evidence seized in violation of art. 18.01 is not innocuous. The "hardcore" pornography for which he was not charged was prejudicial to the crime charged of sexually assaulting a child. Appellant's notebook contained "clippings" of advertisements for pornographic material. The books seized relate in some manner to appellant's desires to be sexually involved with young women. The illegally obtained evidence was not harmless. Appellant's twenty-fifth point of error must be sustained.

The judgment of the trial court is RE-VERSED and the cause REMANDED for a new trial.