Mary Jane RODRIGUEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–81–00326–CR.

Court of Appeals of Texas,
San Antonio.

Jan. 25, 1984.

Oliver S. Heard, Jr., San Antonio, Thomas Goggan, Roy E. Greenwood, Austin, for appellant.

Bill White, Criminal Dist. Atty., Elizabeth Taylor, Sam Ponder, Hipolito Canales, Jr., David Berchelmann, Jr., Jerry Rosson, Asst. Criminal Dist. Attys., San Antonio, for appellee.

Before CADENA, CANTU and DIAL, JJ.

## OPINION

CANTU, Justice.

Appellant was convicted, by a jury, of murder under TEX.PENAL CODE ANN. § 19.02(a)(2) (Vernon 1974).[1] Punishment was assessed by the trial court at imprisonment in the Texas Department of Corrections for a term of twenty-five years.

The sufficiency of the evidence is not challenged but a brief recitation of the facts is necessary to effectively address appellant's contentions.

The evidence reflects that on February 10, 1978, at approximately 6:15 p.m., medical technicians with the Emergency Medical Services of the City of San Antonio responded to a poisoning call at 502 Frio Street. As the EMS vehicle pulled up, a woman later identified as appellant, brought a child wrapped in a blanket out to the vehicle. The child was semi-conscious and bore numerous bruises on her arms, legs, back and buttocks.

Appellant initially suggested to the EMS technicians that the child had swallowed "Pine-Sol" cleaning fluid and had fallen down some stairs.

The child died at the Bexar County Hospital after being treated by Dr. David Oberndorf. According to Dr. Oberndorf the child had suffered a ruptured spleen, a ruptured liver, a skull fracture and various other internal injuries. Cause of death was thought to be due to massive internal bleeding and shock.

On February 11, 1978, Homicide detective Abel Juarez spoke with appellant and, following a *Miranda*[2] warning, he obtained a statement from appellant.[3]

---

1. "A person commits an offense if he:
    (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; ..."

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. Omitting the warnings and formal parts, appellant's extrajudicial confession reads as follows:

I would like to state, that Friday, 2/10/78, at around 5:30 P.M. I was at home with my two brothers, Andrew, Roland, my son Juan and my daughter Valerie. All four of them were outside playing and it was getting late, so I called them, to come inside. They all came inside the house, went to the bathroom and closed the door. I started wondering, what they were doing inside the bathroom, so I opened the door. I saw Valerie, hugging and kissing my son Juan. I hate for her to kiss him and I have told her many times not to kiss him, because it makes me mad, he is only three years old. I then grabbed Valerie by the arm and took her inside my bedroom and then slapped her on the face, several times. Then I got a belt and I hit her several times with it, all over her body, head, arms, legs, etc. I don't know how many times I hit her, but I do know, it was a lot of times. I then stopped hitting her with the belt but I was still mad at her. She kept on screaming and crying and when I told her to be quiet, she kept on and would not stop. So, then I got a board, that we use to bolt the door with, to keep it from opening. I then hit her with it a lot of times, all over her body and did not stop hitting her, until she stopped screaming. I don't remember how many times I hit her, but I do know I hit her for a long time. She laid down on the mattress, after I stopped hitting her and she went to sleep.
I then got scared, because I thought I might have hurt her and I tried to wake her up. I could'nt [sic] get her to wake up and this is when I went outside, walked to a nearby garage and told the mechanic to call an ambulance, that my baby was sick. I then went home and waited for the ambulance. After a few minutes, E.M.S. and the Police arrived. I told them that my baby had accidently drank Pine Sol and did not tell them the truth, because I was scared. The E.M.S. men, then took me and my baby to the Bexar County Hospital and later on, a Police officer, took me to the Homicide Office. There I talked to the Detectives and I told them that my husband Francisco Rodriguez, who is in Mexico, had beat up my daughter. He was always hitting her, the last time he came to visit us and this was about three weeks ago.
This is the truth and exactly what happened to my daughter. I have not been promised any-

As a result of the statement, detective William Wolfe went to appellant's home and obtained a belt and a board that had been mentioned in appellant's statement.

Dr. Ruben Santos, the Bexar County Medical Examiner, confirmed the cause of death to be the result of internal bleeding and serious internal injuries.

Appellant relied upon the defense of alibi and upon the declaration of a third party admitting guilt through the judicial confession of Andrew Lara, appellant's thirteen year old mentally retarded brother. Appellant did not testify.

By her first ground of error, appellant claims the trial court erred in denying her motion for mistrial urged during final arguments when the State prosecutor allegedly commented on her failure to testify.

It was the defense's theory that appellant's brother Andrew, a mental retardate who suffered seizures, had inflicted the injuries resulting in the child's death during one of these seizures at a time when appellant, her mother and grandmother were away from the home.

The State countered with the theory that, Andrew had been instructed by someone to take the blame for the homicide so as to exonerate appellant.

During final jury arguments the prosecutor argued:

(Prosecutor): Thank you. But, then, of course, the catch-all in this is, well, don't worry about Roland and Andrew's story not jiving, because poor Andrew probably just couldn't remember, this is a part of his disease. Well, you know, that's just really convenient. I mean, that just plugs in everything. When in doubt, well, he can't remember, so it's all right, skip over that, or perhaps he is not remembering it right. Well, that's ridiculous, too. Please don't brand Andrew as a murderer.

This woman did it and she should be found guilty of it.

Also, remember the picture that was painted of Andrew by others. The one thing we do know, he did have a grand mal seizure. No one is contesting that. But he had it as a result of a drug given to him before surgery. Since that time, the only rage, only seizure we know about that they say they know about is the beating death of Valerie. Did you hear anyone else every talk about how he smashes things, how he becomes irritable, can't sleep? All you heard about was from the doctor. Did his family get up there and say that? No. They didn't. Did you hear about any other rages he has had, any other attacks on children? No. In fact, Ms. Callaway told you, well, we have got this little dwarf, eight year old girl that's about the size of a one year old, and what does Andrew do? He helps her, picks her up so she can drink water. And what did Andrew tell you about what happens when people pick on him? I go to another place to think. That's not a boy that could do what was done to Valerie. Not Andrew Lara.

The doctor also made a point of he had hoped a question would be asked while Andrew was rubbing his head and looking confused, because maybe he was having a petit mal seizure. Well, if that's indication of seizure, I think there are an awful lot of us that are in trouble. An awful lot of us, including myself. Because I often do that. But I would suggest to you when Andrew did that what he was doing was trying to remember what he had *been told to say*. And don't misunderstand me, I am not accusing Mr. Heard or Mr. Goggan of doing this, no. But he does have a family, and we haven't heard from all of the family. And—

thing for giving this statement. This statement was read back to me in english [sic] by Sgt. L. Brown, because I do not know how to read in

english [sic]. Everything he has read back to me is exactly what I told Det. Juarez and it is the truth.

MR. HEARD: Your Honor, that's a comment on the failure of the defendant to testify and we move a mistrial. We object to it and we ask for a ruling on the objection.

THE COURT: All right. The jury will be instructed to disregard the last comment by the prosecutor with the regard to comment that she made about the family.

MR. HEARD: Your Honor, for the reasons previously stated, we must now move for a mistrial.

THE COURT: Overruled. (Emphasis supplied.)

Appellant argues that the comment, "... we haven't heard from all the family" necessarily amounts to a direct comment upon appellant's failure to testify under the facts and circumstances presented in the case.

From the defense's evidence it was established that only three persons, besides the deceased, were at the scene of the homicide, thirteen year old Andrew Lara, his nine year old brother Roland Arriaga and appellant's four year old son. Since Andrew and Roland testified, appellant reasons only she remained as a potential witness because four year old Johnny was not a competent witness and thus the prosecutor's argument necessarily referred to her. We do not view the prosecutor's argument in the same light as does appellant nor do we think the jury naturally and necessarily took it to be a comment on appellant's failure to testify.

It is basic and fundamental constitutional and statutory law in this State that the failure of an accused to testify during his trial may not be the subject of direct or indirect comment by a prosecuting attorney during his final jury argument. *See Angel v. State*, 627 S.W.2d 424 (Tex.Cr.App.1982); TEX. CONST. art. I, § 10; TEX.CODE CRIM.PROC.ANN. art. 38.08 (Vernon 1979).

■ A direct comment upon a defendant's failure to testify will result in a reversal unless the error is shown to be harmless beyond a reasonable doubt.

■ For an indirect comment to constitute reversible error, it must call for a denial of an assertion of fact by contradictory evidence that only the defendant is in a position to offer. *Nickens v. State*, 604 S.W.2d 101 (Tex.Cr.App.1980, En Banc).

■ The statute is not shown to have been infringed by disclosing that counsel, in argument, used language which might be construed as an implied or indirect allusion to the failure of the accused to testify. To come within the prohibition, the implication must be a necessary one, that is, one that cannot reasonably be applied to the failure of the accused to produce other testimony than his own. Where there is other evidence to the absence of other evidence, to which remarks may reasonably have been applied by the jury, the statute is not transgressed. *Garrett v. State*, 632 S.W.2d 350 (Tex.Cr.App.1982).

■ The test employed is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the accused's failure to testify. *Bird v. State*, 527 S.W.2d 891 (Tex.Cr.App. 1975).

In applying this test, the facts and circumstances of each case must be analyzed to determine whether the language used was of such character. *Nickens v. State*, *supra*.

■ The reference by the prosecutor, to not having heard from all the family, contrary to appellant's contention, did not address potential witnesses to the assault. Rather, it is evident, the prosecutor was arguing that there were several family members who might have influenced Andrew to testify in a manner exonerating appellant. When considered in its entirety, the prosecutor's argument was not manifestly intended nor was it of such character that the jury would naturally and necessarily take it to be a comment on the accused's failure to testify.

There were two adult family members who the jury knew about that did not testify and who were in a position to exert influence upon Andrew. According to Andrew, his mother, his grandmother and appellant were all away from home at the time of the incident. Thus, while Andrew's mother and grandmother could not shed light on the assault, both or either might have shed light on Andrew's manner of testifying, and could have offered contradictory evidence to the effect that Andrew was not told to perjure himself.

We hold that the language complained of is not a direct comment nor does it necessarily refer to appellant's failure to testify by implication.

We further note that the cautious trial court immediately instructed the jury to disregard any reference to family members. Although we hold the argument to be proper, any possibility of error was cured by the trial court's instruction. *Anderson v. State*, 633 S.W.2d 851 (Tex.Cr. App.1982). Appellant's first ground of error is overruled.

By her second ground of error, appellant alleges that the trial court erred in overruling her objection to improper jury argument by the prosecutor. It is contended that the trial court's ruling constituted a comment on the weight of the evidence.

During final jury arguments, the prosecutor stated:

And please remember one of my last questions to Andrew was, Andrew, you really didn't hit her, did you, and in a very small voice he said 'no.' Please remember that question and answer.

Counsel for appellant immediately objected to the prosecutor's argument, with the following objection:

Your Honor, we object to that. That's not the testimony. The jury should be instructed to go by what they remember.

The objection was overruled and no instruction was given. Appellant contends that the action by the trial court in overruling her objection and in refusing the instruction requested constituted a comment on the weight of the evidence amounting to error of constitutional dimension.

TEX.CODE CRIM.PROC.ANN. art. 38.-05 (Vernon 1979) provides:

In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

Appellant's contention that the trial court's ruling was, in effect, equivalent to informing the jury that it was the court's recollection that the prosecutor's version of the facts was correct is without merit.

The court's ruling in this case was nothing more than the court carrying out its duty to rule on objections without embellishment or unwarranted comment. *Smith v. State*, 595 S.W.2d 120 (Tex.Cr.App.1980), *rev'd on other grounds sub nom. Ex parte Smith*, 650 S.W.2d 68, 70 (Tex.Cr.App.1982) (en banc opinion after remand).

The record reflects the following testimony during the trial:

(PROSECUTOR):

Q: Andrew, you really didn't hit Valerie, did you?

A: On the wall?

Q: No, anytime?

A: No.

■ The record supports the prosecutor's version of the facts. The trial court correctly ruled on the objection without invading the jury's province as fact finders and judges of the credibility of the witnesses and without giving credence to the State's version of a disputed fact issue. Appellant's second ground of error is overruled.

Appellant, in her third ground of error, urges that the trial court erred in failing to sustain her timely objection to what she contends were inflammatory and prejudicial photographs.

The photographs complained about are of the deceased child taken by the treating physician and depict the bruised body of the child as seen at the hospital.[4] The two EMS technicians testified that the photographs accurately depicted the condition of the child at the time they responded to the Frio Street address. The photographs were admitted into evidence following verbal descriptions of the deceased's physical appearance.

■ The admissibility of a photograph is conditioned on its identification by a witness as an accurate portrayal of facts relevant to the issue and on verification by such witness or a person of knowledge that the photograph is a correct representation of such facts. *Goss v. State,* 549 S.W.2d 404 (Tex.Cr.App.1978).

■ Though the photographs are gruesome, they are competent, material, relevant to the issues of identification of the deceased and the cause of death, and admissible the same as a verbal description of the body of the victim. *Moreno v. State,* 587 S.W.2d 405 (Tex.Cr.App.1979); *Martin v. State,* 475 S.W.2d 265 (Tex.Cr.App.1972), *overruled on other grounds, Jackson v. State,* 548 S.W.2d 685, 690 (Tex.Cr.App. 1977), *dism'd w.o.j.,* 409 U.S. 1021, 93 S.Ct. 469, 34 L.Ed.2d 312 (1972). Appellant's third ground of error is overruled.

In her fifth ground of error, appellant complains of the trial court's ruling admitting her written confession into evidence. Appellant asks us to hold that her written confession was inadmissible, as a matter of law, because the medical testimony indicates that she suffered from diminished capacity and could not have voluntarily given a written confession.

Prior to trial, a *Jackson v. Denno* [5] hearing on the voluntariness of the confession was conducted.

Detective Juarez testified that he came in contact with appellant at the police station on February 11, 1978 at about 9:45 a.m. After he administered the *Miranda* warning to her, he ascertained that she understood the meaning of the warning. Juarez, while communicating with appellant in English and in Spanish, commenced to reduce her statement to writing. Detective Lloyd R. Brown then read the statement back to her slowly in English and appellant verified that the statement was true and correct. Appellant signed the statement in his presence and in the presence of two other lay witnesses.

Appellant, testifying in her own behalf, admitted telling Detective Juarez that she had beaten her child. She further admitted signing the confession in his presence and in the presence of two other lay witnesses after it was read back to her by Detective Brown. She, however, denied that the statement was true.

Appellant also called as her witness, Dr. Betty Lou Schroeder, a clinical psychologist, who testified she had performed several tests on appellant designed to measure her mental ability. According to Schroeder, appellant possessed a numerical IQ of 56 but was capable of understanding the meaning of a jury trial, and the right to maintain her silence. Schroeder believed appellant was capable of knowingly waiving these rights and further believed that appellant understood the meaning of the charges against her and could assist her attorney in the preparation and trial of her case. Schroeder concluded that, in her opinion, appellant was capable of giving a voluntary confession.

Appellant's mother and brother, Andrew, testified and related aspects of appellant's prior medical history.

After the testimony, the trial court found, beyond a reasonable doubt, the following:

1) On February 10, 1978, at 6:55 P.M., Emergency Medical Service Personnel answered an emergency call at the home of Mary Jane Rodriguez. The Defendant

---

4. They are not photographs taken after an autopsy. *Cf. Terry v. State,* 491 S.W.2d 161 (Tex. Cr.App.1973).

5. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

brought to the Emergency Medical Personnel a semi-conscious child, that appeared to be seriously beaten. That child, Valerie Rodriguez, the daughter of the Defendant died that day from internal injuries.

2) On February 11, 1978, the Defendant was in custody of San Antonio Police at the County Jail.

3) Appellant[6] speaks and understands the English language but does not read.

4) At 9:45 P.M., on February 11, 1978, Detective Abel Juarez just came into contact with the Appellant at the Police Station and informed the Appellant of her rights by reading those rights from a San Antonio Police Department Warning Card as follows:

> ... Before you are asked any questions, it is my duty as a Police Officer to advise you of your rights and to warn you of your rights and to warn you of the consequences of waiving those rights.
>
> Number 1: You have the right to remain silent.
>
> Number 2: You do not have to make any statement, oral or written, to anyone.
>
> Number 3: Any statement you make will be used in evidence against you in a Court of Law at your trial.
>
> Number 4: You have the right to have a lawyer present to advise you before and during any questioning by either police officers or attorneys representing the State.
>
> Number 5: You may have your own lawyer present or if you are too poor to hire a lawyer, then the court will appoint a lawyer for you free of charge now or at any other time.
>
> Number 6: If you decide to talk with anyone, you can or you can stop talking to them at anytime you want.
>
> Number 7: The above rights are continuing rights which can be urged by you at any stage of the proceedings.

When asked if she understood these rights, the appellant said she did and she willingly answered questions of Detective

Juarez. Appellant never attempted to exercise any of the aforementioned rights.

5) Just prior to the taking of the written statement, Detective Juarez again advised her of her rights as were contained on State's Exhibit No. 1. .

6) At the Police Station, the Appellant's statement was reduced to typewritten form and was signed by the Appellant. Prior to the Appellant signing the statement, Detective Lloyd R. Brown read the Appellant's statement back to her slowly from top to the bottom of the page.

The Appellant stated that she did understand the statement and that it was true and correct. Two (2) civilian employees of the San Antonio Police Department as well as Detective Juarez and Detective Brown witnessed Appellant's signature at 10:25 A.M.

7) No force, threats, persuasion, or promises nor any form of coercion were used in obtaining Defendant's confession.

8) While the Appellant has less than normal intelligence, she was knowledgeable of the situation and was mentally capable of knowingly and intentionally waiving her right to remain silent and to make a knowing and voluntary confession.

9) There is evidence beyond a reasonable doubt that the confession was freely and voluntarily given and with a complete understanding by the Appellant of her federal and state constitutional rights which had been read to her.

## CONCLUSIONS OF LAW

▋ The court concludes as matters of law.

1) The Defendant, after repeated warnings, knowingly, intelligently and voluntarily waived her rights under TEX.CODE CRIM.PROC.ANN. art. 38.22 (Vernon 1979).

2) The Defendant's confession was not the product of force, threats, persuasion,

---

**6.** The trial court in its findings refers to the appellant as both, defendant and appellant.

intimidation, or promises, but was freely and voluntarily given.

3) The Defendant's voluntary confession was therefore admissible in evidence as a matter of law.

The record fully supports the findings of the trial court.

Appellant's contention that the evidence showed that her mentality was such that she could not, as a matter of law, knowingly and intelligently waive her right to remain silent is not supported by the record.

The testimony of officer Juarez and others who came into contact with appellant at the time of the execution of the written confession as well as appellant's own testimony at the hearing belies her contention that she, as a matter of law, was of abnormal mentality which prevented her from understanding the meaning and effect of her confession. *Cf. Grayson v. State*, 40 Tex.Cr.R. 573, 51 S.W. 246 (1899).

■ In determining the admissibility of a confession of a crime, the fact that it was made by one whose mentality was at a lower than normal level is to be taken into consideration and viewed as a factor indicating, although not establishing, that the confession was lacking in voluntariness. *Casias v. State*, 452 S.W.2d 483 (Tex.Cr. App.1970); *Hanus v. State*, 104 Tex.Cr.R. 543, 286 S.W. 218 (1926).

■ A confession is not inadmissible merely because the accused, who is not claimed to be insane, is of less than normal intelligence. *See Vasquez v. State*, 163 Tex.Crim. 16, 288 S.W.2d 100 (1956).

■ Although the record verifies that appellant is of low mentality we cannot say that, as a matter of law, her low mentality is such as prevents her from knowingly and voluntarily giving and acknowledging her written confession. Appellant's fifth ground of error is overruled.

The fourth ground of error alleges that the trial court erred in excluding from evidence a tape recording of a conversation between appellant's expert witness and Andrew Lara.

Appellant argues the admissibility of the taped conversation as an oral confession pursuant to the provisions of TEX.CODE CRIM.PROC.ANN. art. 38.22 (Vernon Supp.1982–83), as invited evidence and as impeachment evidence.

Appellant called Dr. Larry Aniol, a clinical psychologist, as a defense witness. Dr. Aniol described the psychological makeup of Andrew Lara. During cross-examination by the State, the doctor was asked whether he believed or disbelieved Andrew's incriminating story. Dr. Aniol testified that Andrew's admission of guilt was consistent with the evidence, was reasonable and in his mind created a doubt that appellant committed the murder. During redirect, Dr. Aniol related that he had been in the courtroom throughout Andrew's entire testimony. He further testified, without objection, that the version of the events testified to by Andrew was consistent with the previous conversation he had with Andrew wherein guilt had been admitted by Andrew.

Dr. Aniol revealed that he had tape recorded his interview with Andrew. The tape was marked and offered as defense exhibit number 4 but was not received into evidence by the trial court. Appellant was then permitted to ask Dr. Aniol whether Andrew's testimony was consistent with the contents of the recording. Dr. Aniol replied in the affirmative and offered the opinion that Andrew was telling the truth both from the witness stand and during the interview.

The State offered, in rebuttal, the testimony of Detective Frank Castillon who submitted a prior written statement made by Andrew which was inconsistent with his testimony given at trial and which corroborated appellant's confession.

Appellant then sought to reoffer the taped recording as a "prior consistent statement" seeking to rebut a prior inconsistent statement. This second tender was withdrawn by appellant prior to a court ruling and with the stated purpose of preserving error only as might have occurred

due to the trial court's denial of the initial tender.

We focus our attention, in reviewing appellant's alleged error, only upon the circumstances and facts comprising the initial tender and the corresponding court ruling.

The record reflects the following relative to the tender of the tapes:

(DEFENSE ATTORNEY)

MR. HEARD: We now offer in evidence the tape identified as Defendant's Exhibit No. 4.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: I don't know what the purpose of the offer is.

MR. HEARD: Ask for it to be received in evidence. That's the purpose of the offer, your Honor.

\*　　\*　　\*　　\*　　\*　　\*

MR. HEARD: We believe they have opened the door to it asking his opinion as to truthfulness and so on and so forth. We want to go into that and want to show what the children told him, want to show how it all developed.

THE COURT: Well, you have the opportunity of—had the opportunity to ask him whether what they said then corresponded with what they say now, and I don't know whether you have covered it adequately to satisfy yourself. To go and play these tapes at this time without—for the purpose that you enumerate, I am not—

MR. HEARD: Your Honor, we think they are relevant and we don't know of any possibility under which they could be excluded in evidence.

THE COURT: I don't know what part of them you claim are relevant. I don't know what the tapes say. I have no way of knowing. They are just tapes. I can't read them, I can't look at them.

MR. HEARD: Well, we suggest that they be received in evidence and played to the court and jury. If they want to interpose an objection—

THE COURT: That will be overruled.

MR. HEARD: Okay. Then I will examine him concerning them, Your Honor.

\*　　\*　　\*　　\*　　\*　　\*

Following the trial court's ruling, appellant was permitted to inquire of the witness into those matters forming the basis for the prior tender of the taped recordings.

Appellant, presumably, was satisfied with the scope of examination permitted. We note that the objectives sought to be achieved by appellant, as enumerated to the court during the tender, were met.

Since the taped recordings were never offered into evidence on a bill of exception, this court is in no position to determine the nature of the evidence sought to be admitted. We are relegated to the purposes stated by defense counsel as sought to be achieved and we are convinced that those purposes were met through the testimony of Dr. Aniol.

■ Appellant recognizes that, in Texas, declarations of a third party admitting guilt of a crime for which another is on trial are admissible only when the State is relying upon circumstantial evidence, when the guilt of such party is inconsistent with the guilt of the accused, and when the facts show that such third party was so situated that he might have committed the crime. *Ramirez v. State*, 543 S.W.2d 631 (Tex.Cr. App.1976).

Appellant recognizes that the existence of the written confession poses a barrier and removes the case from the realm of circumstantial evidence but asks this court to engraft an exception because "the State's case would have been wholly insufficient had the confession not been available." We disagree.

■ Aside from the confession of appellant, there is other evidence in the record supporting a finding that Andrew did not strike the child and that appellant committed the acts. Still, the confession is alone sufficient to prevent the rule in *Ramirez* from rendering admissible appellant's tender of proof.

Nor do we believe the recordings were admissible because the State opened the

door or invited the evidence. Appellant seems to be arguing that because the trial court offered her wide latitude in permitting her to prove up the desired testimony from Dr. Aniol in lieu of admitting the recordings that cross-examination of the witness by the State constituted a waiver of objection by the State as to the admissibility of the recordings.

Appellant candidly suggests that since Dr. Aniol testified that he believed Andrew was telling the truth, she should be permitted to further demonstrate the basis for Dr. Aniol's ability to determine the credibility of his patient. We believe that appellant's stated intent was to bolster the testimony of Dr. Aniol and nothing more. Still, in the absence of a bill of exception, we are in no position to determine what effect, if any, the recordings may have had and, therefore, appellant has not demonstrated that the admission of the recordings would have achieved the result she now advocates. For the same reason, we are constrained to hold that appellant is precluded from contending that the recording constituted a prior consistent statement. But if it did, the testimony of Dr. Aniol developed in lieu of the recording certainly meets the declared desired result and we can perceive no harm to appellant by the trial court's exclusion of the recording. Appellant's fourth ground of error is overruled.

We find no error calling for reversal and the judgment of the trial court is, therefore, affirmed.