COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS


 

NATHANIEL CHRISTOPHER
MARTINEZ,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-05-00395-CR



Appeal from the


109th District Court


of Winkler County, Texas


(TC#4682)



O P I N I O N


 This is an appeal from a jury conviction for the offense of murder. The court assessed
punishment at life imprisonment. We affirm.

I. SUMMARY OF THE EVIDENCE


 On June 15, 2004, the Chief of Police of Kermit, Texas, Ronald M. Hoge, was contacted by
Marcie Bliss, the mother of the victim in this cause, concerning her missing son. Chief Hoge
responded to the call by going to a residence where he encountered Marcie Bliss and her husband,
Jimmy Bliss. The residence was owned by Marcie Bliss, but it was occupied by her son and
Appellant. Chief Hoge went into the house and looked about the rooms. Appellant was seated on
a bed in the front bedroom, and he told Chief Hoge that he had been staying with the victim, John
Paul Hartman, for several days. Appellant stated that the deceased had left the house the night before
with several subjects, and he did not know where they went.

 Due to disarray and possible blood splatter in the house, Chief Hoge contacted the Sheriff
of Winkler County, Robert Roberts, and other officers for assistance. Appellant was advised of his
rights, and he was patted down. The deceased's social security card was found on Appellant's
person. Appellant was transported to the Kermit Police Department. During the course of the
interrogation, Appellant made several conflicting statements, but he ultimately stated that he had
placed the body of the deceased in a 1972 Buick parked in the backyard of the residence. Sheriff
Roberts called Chief Hoge to tell him to break the window of the Buick and gain entry. Chief Hoge
broke into the vehicle and found dismembered parts of a body inside the parked Buick.

 A pretrial hearing was held on September 12, 2005, regarding Appellant's motion to suppress
the items found in the Buick. Sheriff Roberts testified that, during the questioning of Appellant, the
latter freely and willingly gave the information that the body could be found in the automobile. The
sheriff stated that Appellant had been advised of his Miranda rights during the initial part of the
questioning and that he had initialed and signed a waiver statement regarding those rights. Sheriff
Roberts testified that, during the questioning, Appellant was awake and aware of his surroundings,
although it appeared that he been awake for a number of hours and he appeared exhausted. The
sheriff testified that Appellant communicated freely with him, and he was very restless. He appeared
to be communicating voluntarily at both the initial interview and when they were later joined by
Texas Ranger Jess Malone. Appellant never asked to stop the interview.

 Sheriff Roberts stated that he was in telephone contact with Chief Hoge and that, initially,
Chief Hoge could not see anything in the Buick. However, Appellant was adamant, and the sheriff
told Chief Hoge to continue looking in the car. The sheriff described Appellant as being emotionally
distraught, but in his right mind at the time. Sheriff Roberts eventually told the officers on the scene
to break the window of the car, because they could not see into the car, due to a number of items
piled up inside the vehicle. Although Appellant was insistent that the deceased's body was in the
vehicle, Sheriff Roberts was still operating under the belief that Appellant might be injured, but alive
and in need of medical attention. The sheriff took Appellant's statements that he had killed the
decedent as mere unproven allegations, as he had not said earlier that Hartman was deceased. 
Similarly, Chief Hoge testified that, until the body was found, they were engaged in a missing
persons investigation.

 At another pretrial hearing held on October 19, 2005, Jess Malone, a sergeant with the Texas
Rangers, testified that he took two statements from Appellant, one on June 15, 2004, and another
one on June 21. The first statement was the initial confession, and the subsequent statement cleared
up some details. When Ranger Malone arrived for the interview, Sheriff Roberts had already
obtained a written waiver of rights from Appellant. An audio recording of Ranger Malone's June
15 interview confirms that he also read Appellant his rights during the interview. Ranger Malone
believed that Appellant was in complete understanding of his rights. The officer stated that
Appellant exhibited the effects of sleep deprivation, fatigue, and stress, but he did not appear to be
under duress and he appeared "pretty laid back." Appellant was not belligerent; he was amiable and
cooperative, although at times he appeared distracted.

 Ron Tisdell testified for the defense. He stated that he was a toxicologist who studied the
side effects and adverse effects of drugs and poisons. He had a Bachelor of Science Degree in
Pharmacy from the University of Alberta. Tisdell had interviewed Appellant and ascertained that
he had a pattern of drug usage for fifteen to sixteen years. His drug usage had included cocaine,
ketamine, LSD, and methamphetamine. Appellant told Tisdell that he had ingested
methamphetamine and alcohol immediately prior to being taken to the police station, where he gave
his statement.

 Tisdell testified that an individual's judgment would be impaired for at least 72 hours
following a dose. He stated that, hypothetically, a person who had been using drugs for as long as
Appellant was at a high risk to sustain brain injury. In his opinion, Appellant was unable to
understand the Miranda warnings, and he was not able to waive his rights. Tisdell testified that he
had reviewed the audio recordings of the interviews, and he had reviewed the testimony of Ranger
Malone about Appellant's demeanor and the manner in which he answered the questions. Tisdell
stated that these factors were consistent with someone who had suffered brain damage from long-term methamphetamine abuse.

II. DISCUSSION


 In Issues One and Two, Appellant contends that the court erred in admitting his statements,
because he had not knowingly waived any constitutional rights and the statements were not made 
voluntarily. Specifically, Appellant maintains that he could not have waived his rights and given his
statements voluntarily, due to the brain damage (1) caused by his prior drug use and intoxication during
the interview.

 In reviewing the voluntariness of a confession, almost total deference must be given to the
trial court's determination of historical facts in a suppression hearing. State v. Ross, 32 S.W.3d 853,
856 (Tex. Crim. App. 2000); O'Hara v. State, 27 S.W.3d 548, 550 (Tex. Crim. App. 2000). The
appellate court must also review the evidence in the light most favorable to the trial court's ruling
and cannot reverse the trial judge's decision on the admissibility of evidence, absent a clear abuse
of discretion. Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); see Carmouche v.
State, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000). In that regard, the court may believe the
testimony of the State's witnesses and discount the testimony of those for the defense. If the trial
court's findings are supported by the record, we are not at liberty to disturb them. Green v. State,
615 S.W.2d 700, 707 (Tex. Crim. App. 1980). We review the trial court's application of the law
under a de novo standard. O'Hara, 27 S.W.3d at 550. The trial court's ruling will be affirmed, if
it is correct under any theory of law. Romero, 800 S.W.2d at 543; Laca v. State, 893 S.W.2d 171,
177 (Tex. App.--El Paso 1995, pet. ref'd).

 The requirement that, before an accused's statement may be used against him, it must be
shown that the statement was made freely and voluntarily, is of constitutional dimension. Jackson
v. Denno, 378 U.S. 368, 376-78, 84 S. Ct. 1774, 1780-81 (1964). The Code of Criminal Procedure
provides that a statement of an accused may be used in evidence against him, if it appears that it was
freely and voluntarily made, without compulsion or persuasion. Tex. Code Crim. Proc. Ann. art.
38.21. The determination of whether a confession was voluntary under the due process clause of the
Fourteenth Amendment to the United States Constitution must be based upon examination of the
totality of the circumstances surrounding its acquisition. Armstrong v. State, 718 S.W.2d 686, 693
(Tex. Crim. App. 1985).

 In determining the admissibility of a confession, the fact that it was made by one whose
mentality was at a lower than normal level is to be considered and viewed as a factor indicating,
although not establishing, that the confession was lacking in voluntariness. Casias v. State, 452
S.W.2d 483, 488 (Tex. Crim. App. 1970); Rodriguez v. State, 666 S.W.2d 305, 313 (Tex. App.--San
Antonio 1984, no pet.). A confession is not, however, inadmissible merely because the accused, who
is not insane, is of less than normal intelligence. Rodriguez, 666 S.W.2d at 313.

 Furthermore, in addressing the voluntariness of Appellant's statement, we note that
intoxication, while relevant, does not render a confession involuntary per se. Jones v. State, 944
S.W.2d 642, 651 (Tex. Crim. App. 1996). Rather, it is a factor the court must consider in making
its evaluation. Specifically, the court must determine whether the defendant's intoxication rendered
him incapable of making an independent, informed decision to confess. Id.

 In the present case, if the court chose to believe the testimony of Sheriff Roberts and Ranger
Malone, it could have readily found that Appellant was capable of waiving his rights and giving a
voluntary confession. While Appellant was distracted and contradictory at times, the testimony of
both officers indicates that Appellant understood his rights, was cooperative and voluntarily gave
his statements. We find that the court did not err in allowing the statements into evidence. Issues
One and Two are overruled.

 In Issue Three, Appellant maintains that the court erred in admitting physical evidence that
was found in the Buick automobile, as it was the result of an illegal warrantless search. Although
the Fourth Amendment to the United States Constitution generally prohibits warrantless searches,
both the United States Supreme Court and the Texas Court of Criminal Appeals have recognized that
in limited situations, an immediate search without a warrant is reasonable, where a risk of injury or
death exists. Colburn v. State, 966 S.W.2d 511, 519 (Tex. Crim. App. 1998); Brimage v. State, 918
S.W.2d 466, 500-01 (Tex. Crim. App.) (op. on reh'g), cert. denied, 519 U.S. 838, 117 S. Ct. 115
(1996); see also Mincey v. Arizona, 437 U.S. 385, 392, 98 S. Ct. 2408, 2413 (1978).

 This exception, known as the Emergency Doctrine, or the Exigent Circumstances Doctrine,
allows an immediate, warrantless search, where a police officer has reasonable cause to believe that,
if the search were delayed to obtain a warrant, serious bodily harm or death might result. Colburn,
966 S.W.2d at 519; Brimage, 918 S.W.2d at 500-01.

 Additionally, we note that officers may enter a building where a "body" has been reported,
for the report of death may be inaccurate, and it may be possible to revive the body. Bray v. State,
597 S.W.2d 763, 764 (Tex. Crim. App. 1980). We apply an objective standard of reasonableness
in determining whether a warrantless search is justified, taking into account the facts and
circumstances known to the police at the time of the search. Colburn, 966 S.W.2d at 519.

 In the present case, while the investigating officers heard from Appellant that he had killed
Hartman, they testified that they still harbored a belief that he still might be alive. It was the function
of the court to determine the credibility of these statements, and we find that the court did not err in
admitting the evidence found as a result of the warrantless search of the vehicle. Issue Three is
overruled.

III. CONCLUSION


 We affirm the judgment of the trial court.


 KENNETH R. CARR, Justice


August 31, 2007


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)

1. Tisdell's testimony about brain damage was "hypothetical"; he did not opine on the extent, if any, of brain
damage which Appellant himself had suffered.