**Joe Frank HERNANDEZ, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. A14–87–184–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

June 9, 1988.

Scott Ramsey, Houston, for appellant.

John B. Holmes, Jr., Linda A. West, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and ROBERTSON and CANNON, JJ.

## OPINION

J. CURTISS BROWN, Chief Justice.

A jury convicted Joe Frank Hernandez [Hernandez] of violating section 22.-011(a)(2)(A) of the Texas Penal Code by sexually assaulting a child between the ages of fourteen and seventeen. The court assessed his punishment at confinement in the Texas Department of Corrections for eight years.

Hernandez asserts four grounds of error: First, that the trial court erred in refusing to submit to the jury evidence regarding the promiscuity of the complaining witness before the indicted offense; second, that the trial court erred in not finding that the evidence established the defense of promiscuity as a matter of law under TEX.PEN. CODE § 22.011(d)(1) (Vernon Supp.1988); third, that the trial court erred in admitting into evidence a photograph depicting him nude with an erection; fourth, that the trial court erred in admitting evidence of extraneous offenses. We reverse, sustaining points one, three, and four.

In addition to the brief that counsel filed, Hernandez has filed a pro se brief with this court. No right to hybrid representation exists in Texas. *Rudd v. State*, 616 S.W.2d 623, 625 (Tex.Crim.App.1981); *Normand v. State*, 686 S.W.2d 275, 279 (Tex.App.— Houston [14th Dist.] 1985, pet. ref'd). Appellant's pro se brief presents nothing for review. We have, however, examined the contentions in the pro se brief and find no error we should consider in the interest of justice.

The complainant once lived in San Antonio next door to Hernandez. At the time, he was approximately sixty-seven years old. The complainant lived there from the time she was approximately eleven years old until she was thirteen. During this period, Hernandez acquainted himself with the complainant and her family. The family moved to Pocohantas, Arkansas when the complainant was thirteen. Two or three years later, the complainant's parents and her fourteen year old half sister, Evelyn, drove to San Antonio. The girls' parents allowed Evelyn to stay with Hernandez, ostensibly so he could buy her some clothes. The complainant testified Evelyn telephoned her mother, and that she overheard her sister saying "[t]hat it hurt, to send Barb down." Afterward, the girls' mother told the complainant that she was to go and stay with Hernandez to "get some clothes." When the complainant's mother sent her to San Antonio to stay with him, Hernandez paid for the plane ticket.

After she arrived, Hernandez had her try on her sister's clothes in front of him to "see how they looked." The complainant testified Hernandez had her change clothes in front of him, stripping down to her panties and brassiere in the process. After complimenting her upon the way Evelyn's clothes looked on her, and after her sister had left the room, Hernandez approached the complainant, put his hands on her body, and informed her that she was going to sleep with him that night. She threatened to tell her mother, but Hernandez said her mother already knew. She testified she did not resist his sexual advances because her mother had "set it up with him." Hernandez' attorney took the complainant on voir dire to challenge her personal knowledge that her mother had "set it up." She explained that her mother had bargained with Hernandez before sending the complainant to visit him the first time. After Evelyn had called to say "it hurts," the complainant had overheard her mother telling Hernandez, "if [the complainant] was to go down there, he was to get [her] some clothes." The next morning, he gave her a short black and orange nightgown out of

his closet. He had her wear the nightgown around the house. During his relationship with her he gave her several other outfits.

At trial, Evelyn denied the girls had disrobed in front of Hernandez and denied either girl had slept with him. Hernandez paid for plane tickets on three or four weekends so the complainant could travel to and from Arkansas. He continued to have her wear the black nightgown with orange lace around his house. Once, the complainant testified, Evelyn accompanied her to San Antonio, and he slept with both girls. The last time the complainant spent the weekend with Hernandez, in San Antonio a short, heavy set "Mexican" man came to Hernandez' house. The complainant testified that Hernandez offered her to the man for one hundred dollars. Hernandez sent the complainant and the man to her bedroom where they copulated. A man named Max came to Hernandez' house the same day. The complainant heard Hernandez offer her to Max for a hundred dollars. Hernandez sent them to her room to copulate. She performed orally upon the man's penis, but after sodomizing her the man could not penetrate her vagina with his penis. The complainant testified she did not object to the sexual abuse because she was afraid her mother would ground her or beat her. She had spoken to her mother about the sexual assaults, including oral sodomy, and her mother had continued to send her to Hernandez. Her mother told her it was "to pay the bills." Hernandez was giving her mother money from time to time. Throughout the trial, the complainant testified she was very much afraid of her mother. She testified her mother had hit her in the head with her hand, injuring the hand. In addition, she testified that scars on her head had resulted from her mother hitting her in the head two or three times with an iron skillet. She also testified Hernandez had also spanked her once because she could not figure out how to use the dust buster, a vacuum that had only recently come out on the market.

A week or two after her last weekend visit with Hernandez, the complainant's family moved back to San Antonio. The complainant and her sister lived with Hernandez. Their parents lived down the street about a block away. The complainant testified Hernandez was selling both girls' sexual favors to men. He also took nude pictures of the complainant.

Hernandez moved to Houston in late 1985. The complainant's mother made her quit school and go to live with Hernandez in his one bedroom apartment. While she stayed with him in Houston, Hernandez had sexual intercourse with the complainant. She testified Hernandez also brought home a Pekinese puppy. He made the Pekinese "use his mouth" on the complainant's vagina. Other men also visited the apartment.

Several days before the complainant escaped from the apartment, a short, fat, elderly black man came to the apartment. Hernandez made the complainant sit in the man's lap in her orange and black lingerie. Hernandez and the man discussed a trade in which Hernandez would get a parking lot for his restaurant, and the complainant was to "be with" the man for five years. Hernandez sent her to the bedroom, where she had sexual relations with the man. Hernandez also brought home a woman named Anita several days before the complainant escaped. He had visited Anita at her mobile home in the past in order to "check on his oil wells." After Hernandez had sold the complainant, Anita moved into the apartment and slept with Hernandez. The complainant slept in the living room. The complainant testified she had not left Hernandez' apartment before this time because she had no money, she would be locked out, she knew no one in Houston, and she thought Hernandez would find her before she got far. However, she testified she was afraid and cried because she had been sold to the elderly black man and "he was so big" she did not know what to do. On the night of February 12, 1985, while Hernandez was at work, the complainant went out of the apartment to a pay telephone. Anita remained in the apartment to let the girl back in when she pressed the telephone code at the security door. The complainant phoned her grandmother in Michigan. Her grandmother gave her the

unlisted telephone number of an aunt who lived in Conroe. After about an hour, her aunt picked her up at 5600 Fannin. The complainant's aunt took her to the apartment to pick up her clothes and the Pekinese puppy. Then her aunt took her to Conroe. The next morning, the complainant called the police.

A grand jury indicted Hernandez as follows:

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS: The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, JOE FRANK HERNANDEZ hereafter styled the Defendant, heretofore on or about February 8, 1985, did then and there unlawfully intentionally and knowingly cause the penetration of the vagina of ... the Complainant, a person younger than seventeen years of age and not his spouse by placing his sexual organ in the vagina of the Complainant. AGAINST THE PEACE AND DIGNITY OF THE STATE.

The trial court refused to admit evidence the complainant had been promiscuous before the date of the indicted offense. The complainant's half sister testified outside the hearing of the jury that the complainant had engaged in sexual relations with several boys before the date of the indicted offense. She testified to seeing the complainant once naked in a trailer at Hernandez' ranch on top of a teenage boy. She also testified to seeing the complainant naked in a pickup truck, in Arkansas, beneath another boy who wore only a pair of undershorts around his knees. She testified to seeing the complainant naked on top of another boy at his house in San Antonio. She further testified that the complainant had told her about being "in bed with" and "messing around and stuff" with the brother of the boy she had slept with at Hernandez' ranch. The complainant testified she had engaged in sexual relations with two of the boys more than once, but indicated she had done so with one only before she was "going with" the other. The complainant denied having sexual relations with any other boys.

◼ The trial court should have admitted the evidence of the complainant's previous promiscuity. Texas Penal Code § 22.011 states:

(d) It is a defense to prosecution under subsection (a)(2) of this section that:

(1) The child was at the time of the offense fourteen years of age or older and had prior to the time of the offense engaged promiscuously in conduct described in that subsection....

Texas Rule of Criminal Evidence 412(e) also refers to the defendant's right to produce evidence of promiscuous sexual conduct of a child fourteen years old or older.

The State argues that Hernandez is not entitled to assert the promiscuity defense because consent is not an issue in the case. Neither the indictment of Hernandez nor the charge to the jury in the present case alleges a theory of forcible rape. The State cites *Moore v. State*, 703 S.W.2d 762, 764 (Tex.App.—Houston [14th Dist.] 1985, no pet.). In *Moore*, a grand jury had indicted the defendant for both sexual intercourse with a child and forcible rape. Moore had choked his fourteen year old daughter and threatened to kill her when she resisted being raped. The judgment in *Moore* recited that the State had moved to dismiss the paragraph of the indictment that charged forcible rape. The record did not disclose when the prosecution dropped the forcible rape charge. However, the trial court in *Moore* had indicated when it decided to allow evidence of promiscuity that the defendant did not have to raise the issue of consent in order to offer evidence of promiscuity. This court decided in *Moore* that when the legislature replaced TEX.PEN.CODE Art. 1183 with 21.09 [now 21.011], the legislature intended to continue requiring a defendant to raise consent before allowing him to assert promiscuity as a defense. 703 S.W.2d at 764. In support of this decision, *Moore* quoted Judge Clinton's opinion concurring in the judgment in another case with the same name as the present case, *Hernandez v. State*, 651 S.W. 2d 746 (Tex.Crim.App.1983). When this court decided *Moore*, that opinion concur-

ring in the judgment in *Hernandez* was the only guidance the Court of Criminal Appeals had provided on this issue. Judge Clinton stated, "V.T.C.A.Penal Code, § 21.09, [now renumbered as § 21.011] makes victims under 17 who have not previously engaged in promiscuous sexual or deviate sexual intercourse and those victims under 14, regardless of prior promiscuous sexual conduct, legally incapable of giving consent to sexual intercourse." 651 S.W.2d at 753. Judge Clinton stated this in order to explain that a complainant's testimony in statutory rape cases required no corroboration because she could not be an accomplice witness to her rape.

Judge Clinton wrote for the majority opinion on the issue of promiscuity in *Boutwell v. State*, 719 S.W.2d 164, 167–69 (Tex. Crim.App.1985). He began to address promiscuity with the phrase, "[a]ssuming *arguendo* that appellant was entitled to employ the promiscuity defense...." In the discourse that followed, Judge Clinton stated:

> [B]y providing the "promiscuity" defense, the Legislature has pronounced the complaining witness' prior extraneous sexual conduct to be relevant to a material defensive issue *by statute*.

Thus, the defendant is entitled to have *any* evidence which is relevant to the issue of "promiscuity" submitted to the jury provided he has otherwise shown himself entitled to take advantage of the defense under the statute.

719 S.W.2d at 168 (emphasis in original).

■ After this discourse, the opinion in *Boutwell* concluded that the defendant was not "otherwise ... entitled" because the promiscuity defense did not apply to homosexual assaults. Thus, for guidance from the Court of Criminal Appeals, we have only Judge Clinton's concurrence in *Hernandez* and his conflicting dicta in *Boutwell*. Judge Clinton apparently expected appellate courts to heed his statements in *Boutwell*. He explicitly overruled the language of the appellate court in Austin in his dicta. While *Boutwell* was pending on rehearing, before the opinion was published, our court decided without referring to consent that mere evidence of promiscuity raised the defense. *Boulding v. State*, 696 S.W.2d 457, 459 (Tex.App.—Houston [14th Dist.] 1985), *rev'd on other grounds*, 719 S.W.2d 333 (Tex.Crim.App.1986) (remanding for further consideration in light of *Boutwell*).[1] Section 22.011(a)(2) defines certain sexual contacts with a child as of-

---

1. One of our sister courts apparently agreed with the dicta in *Boutwell* when it stated without mentioning consent that uncontroverted evidence of promiscuity established a defense to section 22.011(a)(2) as matter of law. *See Ormand v. State*, 697 S.W.2d 772 (Tex.App.—Corpus Christi 1985, no pet.). In addition, a number of our sister courts have decided the promiscuity issue without even mentioning the issue of consent as a prerequisite. *E.g., Scoggan v. State*, 736 S.W.2d 239, 241 (Tex.App.—Corpus Christi 1987, no pet.) (stating the promiscuity defense without mentioning consent); *Walker v. State*, 727 S.W.2d 759, 761 (Tex.App.—Tyler 1987, no pet.) (excluded evidence of four acts of sexual intercourse by complainant entitled defendant to promiscuity defense under *Boutwell*); *Wimer v. State*, 717 S.W.2d 468 (Tex.App.—San Antonio 1986, no pet.) (defendant admitted rapes, but his earlier consensual sexual relations with his daughter did not constitute promiscuity); *Jasso v. State*, 699 S.W.2d 658, 660 (Tex.App.—San Antonio 1985, no pet.) (no consideration of consent before denying that acts in evidence constituted promiscuity); *Wicker v. State*, 696 S.W.2d 680 (Tex.App.—Dallas 1985) (appellant asserted ability to consent based on promiscuity, but court did not mention whether

consent was material in analyzing promiscuity), *aff'd en banc*, No. 1175–85 (Tex.Crim.App., Oct. 21, 1987) (not yet reported) (affirming upon challenge to voluntariness of confession); *Chreene v. State*, 691 S.W.2d 748, 750 (Tex.App.—Texarkana 1985, pet. ref'd) (defendant claimed consent was raised, but court did not address consent in finding evidence did not support promiscuity defense); *Scott v. State*, 668 S.W.2d 901 (Tex.App.—Fort Worth 1984, pet. ref'd) (reaching merits of whether conduct was promiscuous without mentioning consent); *cf. Crites v. State*, 700 S.W.2d 23 (Tex.App.—Dallas 1985, no pet.) (applying the closely analogous promiscuity defense in Tex.Pen.Code section 21.11 (Vernon Supp.1985)); *Honc v. State*, 698 S.W.2d 218, 221 (Tex.App.—Corpus Christi 1985, pet. granted) (applying Tex.Pen.Code section 21.11 (Vernon Supp.1985)); *contra Lewis v. State*, 709 S.W.2d 734, 735 (Tex.App.—San Antonio 1986, pet. ref'd, untimely filed) (relying upon the law that applies to forcible rape of adults to hold that the defendant must raise the issue of consent in order to present evidence of promiscuity). The *Lewis* court clearly confused the law applying to forcible rapes with the law applying to statutory rape.

fenses. Consent is irrelevant to statutory rape. Section 22.011(d) makes promiscuity a defense. Subsection (d) does not refer to or require a theory of consent. We decided in *Boulding* the defendant had demonstrated the promiscuity defense applied when he proved the complainant was fourteen years old and had engaged promiscuously in sex before the offense.[2] Although our constitutional analysis in *Boulding* was contrary to *Boutwell,* our analysis of the promiscuity issue agreed with the Court of Criminal Appeals' *Boutwell* analysis. Therefore, we follow *Boutwell* and our *Boulding* analysis of the promiscuity defense. We hold section 22.011(d) does not require a defendant to raise consent before he can assert the promiscuity defense. Consent is simply irrelevant to statutory rape. Under the old statute, a defendant could use promiscuity to prove a child was capable of consent if he proceeded on the theory the child had consented. In section 22.011(d) the legislature has mandated acquittal of statutory rape charges when the child is over fourteen and under seventeen and has been promiscuous before the indicted offense.

The egregious facts of the present case demonstrate the unhappy policy implications of section 22.011(d). The purpose of the newer statutory rape statute was to prevent imposition upon females under the age of seventeen by older and presumably more experienced males.[3] It seems uncivilized to declare young females "fair game" for older males merely because they have had several sexual experiences with boys close to their own age. These girls seem as likely to sustain psychological and emotional damage from the imposition of older male relatives and family "friends" as their less experienced girlfriends. Nevertheless, the newer statutory scheme does not protect sexually "promiscuous" girls unless the State can allege forcible rape in the indictment and prove beyond a reasonable doubt the girl did not consent.

In the present case, if the trial court had admitted the evidence of the complainant's promiscuity, the jury might have acquitted Hernandez. This case demonstrates that the portions of section 22.011 concerning statutory rape have fallen far short of the policy objective of preventing imposition by older males. Section 22.011(d) should be an affirmative defense, requiring active consent of the promiscuous child to establish the defense. Nevertheless, this court cannot usurp the functions of the legislature to correct even the most lamentable errors. The legislature provided promiscuity of the

2. In *Boulding* we stated:

> [T]he record in the present case clearly reveals the complainant was 14 at the time of the December 15th offense....
>
> ....
>
> ... [T]he complainant testified that prior to the sexual encounters with appellant, he had engaged extensively in sexual conduct with about four or five girls. He further testified he is the father of an infant son. This evidence is sufficient under section 21.10(b) [now section 22.011(d)] to show the complainant engaged promiscuously in sexual intercourse. Thus, appellant has successfully demonstrated that section 21.10(b) [now section 22.011(d)] applies to his situation....

696 S.W.2d at 459.

3. State Bar of Texas Committee on Revision of the Penal Code, A New Penal Code for Texas 15 (December 2, 1970) (available at the Legislative Reference Library in Austin). The committee report states that this rationale supported the "incapable of consent" sexual offenses, and that the "innovations" in the new statute are consistent with the rationale of preventing imposition by older males. *Id.* The report refers to a "uniform age of consent." We interpret this as an age below which consent is irrelevant. More importantly, however, the plain facial meaning of the statute is that a complainant's promiscuity before the indicted offense is a defense. The committee comments accompanying the Proposed Penal Code that the legislature passed in 1973 stated:

> The female legally incapable of consenting to sexual intercourse is the subject of the offense created by this section, which is often called statutory rape. Rape by force, threat, or fraud, it should be noted, is proscribed by Sections 21.02 (rape) and 21.03 (aggravated rape), so this Section 21.09 [now subsections (a)(2) & (d) of 22.011] deals only with consensual (in fact) sexual intercourse.

PROPOSED PENAL CODE section 21.09 committee comment (Proposed Official Draft 1970) (63rd Texas Legislature). *See also* TEX.PEN.CODE section 21.09 practice commentary (Vernon 1974) (reciting the exact same language). Hence, consent is not an issue when the indictment alleges an offense under section 22.011(a)(2). The Texas Penal Code does not state the child's consent is a defense. Sex with the child is an offense even if the child consented to the relations.

victim as a complete defense. Therefore, Hernandez had a right to submit to the jury any evidence that would raise a fact issue regarding the complainant's promiscuity. As the evidence in Hernandez' bill of exceptions would have raised such an issue, his first point of error is sustained.

Since the trial court did not admit any evidence of promiscuity, it could not possibly have ruled that the evidence established the defense of promiscuity as a matter of law. Hernandez' evidence would have raised a fact issue regarding promiscuity, but it would not have established the defense as a matter of law. *See Scoggan v. State,* 736 S.W.2d 239, 241 (Tex.App.— Corpus Christi 1987, no pet.) (failed to establish as a matter of law that sex was indiscriminate). Therefore, the appellant's second point of error is overruled.

■ The trial court erred in admitting the nude photograph of Hernandez into evidence during the prosecution's cross-examination of Hernandez' doctor. The prosecutor purportedly offered the photograph to prove Hernandez was not impotent when he sexually assaulted the complainant. Over the objection of Hernandez's attorney, the trial court refused to require the prosecutor to present any evidence of the date the photograph was taken. The only evidence of the time the photograph was taken was the opinion of Hernandez' doctor that the photograph did not depict Hernandez' physiological condition during the time in issue. First, the doctor testified Hernandez had an erection in the picture. He testified this was physiologically inconsistent with Hernandez' abilities during the time in question. Second, the doctor testified Hernandez had not been in the good physical condition depicted in the photograph since several years before the alleged assault occurred. The prosecutor simply failed to set the predicate. Therefore, as admitted into evidence, this photograph had no probative value. A nude photograph of the defendant with an erection in a child rape case is, by nature, highly prejudicial. Admitting this photograph was error. TEX.R.CRIM.EVID. § 103(a). The appellant's third point of error is sustained.

■ The trial court admitted into evidence testimony that Hernandez had arranged sexual liaisons between the complaining witness and various individuals other than Hernandez. A jury is entitled to know all the relevant surrounding facts and circumstances of a charged offense. *Archer v. State,* 607 S.W.2d 539 (Tex.Crim. App.1981). Therefore, where (1) an offense or transaction is one continuous episode or (2) another offense or transaction is a part of the case on trial or blended or closely interwoven therewith, proof of all the facts is proper. *Mitchell v. State,* 650 S.W.2d 801, 811 (Tex.Crim.App.1983). Under a limited exception to the general rule excluding extraneous offenses, prosecutors may present evidence that the accused committed extraneous sexual offenses upon a complainant under the age of seventeen because those contacts are part of a continuing transaction. *See generally Boutwell v. State,* 719 S.W.2d 164, 174–81 (Tex.Crim.App.1985) (opinion on rehearing). The extraneous offenses explain the continuing relationship between the defendant and the complainant. *Boutwell,* 719 S.W. 2d at 176. The defendant must generally have denied the relationship, as Hernandez did in the present case, before the extraneous offenses are admissible. *Id.* It is then more probative than prejudicial to allow evidence of acts between the complainant and the defendant that place the charged act in its proper context of the relationship of the parties. *Id.*

The trial court admitted offenses the defendant committed by arranging for other men to sexually assault the complainant. These offenses did not fall within the *Boutwell* exception. They were not sexual acts between the defendant and the complainant. Hence, the prosecutor was not entitled to present evidence of these extraneous offenses without including them in the indictment. The appellant's fourth point of error is sustained.

Reversed and remanded.

ROBERTSON, Justice, dissenting.

The majority opinion holds that a seventy-year-old man who has non-consensual intercourse with a sixteen-year-old female is entitled to an acquittal if the female had previously engaged in consensual sexual intercourse with three or four boys of her own age. To such holding, I respectfully, but vigorously, dissent.

What the majority opinion fails to state is that appellant *never testified*. Further, the majority opinion does not reveal that appellant *never disputed*, in any fashion, the repeated statements of the complainant on both direct and cross-examination that she did not willingly engage in the sexual acts but that she did so because of her fear of both her mother and appellant. This fear is exemplified by the testimony of her grandmother whom the complainant called from a pay telephone when she escaped from appellant's apartment in Houston. Her grandmother, whom appellant did not even question on cross-examination, testified the complainant called her about 9:30 p.m. on February 12, 1985, in Leslie, Michigan by long distance collect, crying. The record shows the following testimony by the grandmother:

A: She said, "Grandma, send me some money, I'm trying to get out of here.
I said, "Where are you?"
She said, "I'm in Houston."
I said, "Whereabouts?"
And she said, "I don't know the address. All I know, I'm in Houston."
And she said, "My body's been sold and I want to get out of here as quick as I can."
Q: Did that upset you to hear that?
A: Oh, did it. I said, "Whereabouts in Houston are you, Barb? Where are you calling from?"
She said, "From a pay phone on a corner."
And I said, "Look out there and see what the name of the street is."
So she did. She said, "It's Fannin."
I said, "Oh my gosh, Barb, I'm so far away from there I can't get to you right away."

She said she had one hour to get out of there.
Q: Did you tell her what to do?
A: I told to write this number down and it's unlisted and you can't get it any other way.
Q: What number?
A: Aunt Betty's number.
Q: Where did she live?
A: Splendora, I believe, at that time. And I said, "Now remember, you call this number because you can't get it any other way." So she hollered and asked somebody if they had a pencil or pen of something so she could write with. And she told me later that nobody had any. So she made up her mind she was going to have to remember it. So she said she wrote the number with her fingers and she remembered the number so she turned right around and called Aunt Betty. "Now Aunt Betty will be getting home from work right now, so call her." She did.
Q: Did you hear from Barbara again after that call?
A: Yes. I called after Betty picked her up. I kept calling down here to make sure they made connections all right.

The complainant called her aunt who then came and got her at the street intersection she had given her aunt and where her aunt found her hiding behind a building. Further the majority opinion fails to state that the complainant had not used the telephone in appellant's home in San Antonio or his apartment in Houston because appellant had told her that he had a recorder on the phones and would know she had made telephone calls. Finally, the majority opinion does not detail the facts as related by the complainant that she was held a virtual prisoner in both appellant's home in San Antonio and his apartment in Houston because each was protected by burglar bars and an iron locked gate that she could not reenter if she left the house.

I respectfully disagree with the analysis of the applicable law by the majority. It has long been the law in this state that where the sexual intercourse was with a female under the age of consent, prior

promiscuous conduct is a defense *only* when consent is an issue in the case. *Wright v. State*, 527 S.W.2d 859, 863 (Tex. Crim.App.1975); *Esquivel v. State*, 506 S.W.2d 613, 616 (Tex.Crim.App.1974). As we said in *Moore v. State*, 703 S.W.2d 762, 764 (Tex.App.—Houston [14th Dist.] 1985, no pet.)

> Of course, these cases construe the predecessor to section 21.09, Tex.Penal Code Ann. art. 1183 (Vernon 1925). However, we believe the legislature did not intend to change this requirement when they codified the penal code in 1974.

There we held that even if a female between the ages of 14 and 17 had previously engaged in sexual intercourse, such evidence was not admissible unless consent was in issue. *See also Lewis v. State*, 709 S.W.2d 734, 735 (Tex.App.—San Antonio 1986, pet. ref'd, untimely filed). And the court of criminal appeals in *Hernandez v. State*, 651 S.W.2d 746, 753 (Tex.Crim.App. 1983) pointed out that the purpose in revisions of the rape statutes has been to make prosecution of rape cases less difficult. While the court was there addressing the issue of whether corroboration of the minor victim was required, the language is appropriate to the issue before us. There the court stated:

> Surely, we cannot attribute to the Legislature an intention to protect a certain class of victims, such as children, on the one hand, and also attribute to that body an intention to make those same victims as criminally culpable as those persons against whom that protection is designed to shield.

*Hernandez*, 651 S.W.2d at 753. While I acknowledge that § 22.011(d) does not specifically state that prior promiscuity is a defense only when consent is in issue, the law has always so provided. I would find it difficult to allow evidence of prior promiscuous conduct in a case where the victim was a minor when evidence that the victim was a prostitute would be inadmissible in a sexual assault case where the victim was an adult. *Holloway v. State*, 751 S.W.2d 866 (Tex.Crim.App., 1988). Paraphrasing the language of the court of criminal appeals in *Hernandez*, 651 S.W.2d at 754, without compelling indicia that the legislature intended to obliterate such a distinction founded in reason, I would hold that § 22.011(d) embraces the requirement, as always, that before the previous promiscuity of a female between the ages of 14 and 17 can be a defense to a charge of sexual abuse, there must be evidence that she consensually participated. Appellant's first and second points of error should be overruled.

I also disagree with the majority's holding that the admission of the photograph of appellant posing in the nude was reversible error. To put the matter in the proper context, it is important to look to the testimony. Dr. Franklin Rivers, who practiced internal medicine, testified that he had been treating appellant for some fifteen or twenty years and, "as a rule, I would see him at least once a year." When asked about whether he had occasion to treat appellant for any "sexual dysfunction," the doctor stated appellant "had a problem with impotence and inability to perform" and explained:

> That was quite a number of years ago that he first mentioned it to me off the record. It was an embarrassing subject to him, and he had never mentioned it, though, as he was leaving the office on one occasion he questioned me about possible causes of such problems. And that was discussed very briefly on that occasion. Then four years ago he also spoke of this. He was at that time, let's see, that was in November of '82. He said that he was an absolute cripple. It was impossible for him and he wondered if there were any possiblity for treatment of such a condition.

The doctor further testified that he explained to appellant that he could be treated with injections or could be implanted with a prosthesis. It is noteworthy that the doctor testified that appellant did not elect to have "the injections or this prosthesis" and that even though the doctor testified that he gave appellant the names of two urologists, he did not think appellant ever contacted them.

Contrary to this testimony of the doctor, the complainant's sister and mother (both called as witnesses by appellant) testified that "Anita", appellant's fiance, was living and "sleeping" with appellant at various times in both San Antonio and Houston. On cross-examination of the doctor, the prosecutor exhibited a photograph, described in the record as depicting appellant in the nude with an erection. (The exhibit accompanying the record is a xerographic copy of the photograph and it is impossible to discern that about which complaint is made.) The doctor identified the photograph as being a picture of appellant; that the photograph did show that his penis was "erect if that is what you wish to know," but that he did not know when the picture was taken—it could have been "years ago." On redirect examination the doctor opined the photograph was taken "considerably before [1982] when he was in better physical condition."

When the prosecutor had the photograph marked for identification, the jury was removed and the following objection by appellant and response by the prosecutor was made:

MR. RAMSEY [appellant's counsel]: What I anticipate this is to get in the back door what the State didn't try to choose to get into the front door. This is a picture that we have no testimony as to when it was taken. I'll be happy for the doctor to look at it. There was no testimony as to when it was taken, who took it, and you look at the picture and it's completely different than Mr. Hernandez is. It is Mr. Hernandez and it's a completely different picture and he looks completely different than he does today. I see no relevance to influence the jury on a photo that was taken many years ago to indicate when he might at one point be clearly able to perform and when he now can't, according to the doctor. If the State has another picture, I'd be happy to see it.

MS. MANTOOTH [state's counsel]: The only difference in Mr. Hernandez's appearance and how he appears today, he doesn't have any clothes in that picture and he certainly looks a little bit happier than he does in the courtroom. The doctor testified that he can't have an erection and according to his findings can't have an erection. I think this picture is going to show something a little different than that and it's direct impeachment.

It is abundantly clear that the photograph had been sufficiently identified and that it was obviously relevant to the issue before the jury. The only disputed issue was whether appellant, as shown in the photograph, "looked completely different than he does today" as urged by appellant or whether "the only difference in [appellant's] appearance and how he appears today, [is that] he doesn't have any clothes in that picture and he certainly looks a little happier than he does in the courtroom," as urged by the prosecutor. Obviously, the trial judge was in a position to observe and resolve that issue, which he did by admitting the photograph into evidence.

The admissibility of a photograph is conditioned on its identification by a witness as an accurate portrayal of facts relevant to the issue and on verification by such witness or a person of knowledge that the photograph is a correct representation of such facts. *Goss v. State*, 549 S.W.2d 404, 406 (Tex.Crim.App.1978); *Haas v. State*, 498 S.W.2d 206, 211 (Tex.Crim.App.1973); *Rodriguez v. State*, 666 S.W.2d 305, 311 (Tex.App.—San Antonio 1984, no pet.). A photograph, proved to be a true representation of the person, place, or thing which it purports to represent, is competent evidence of those things of which it is material and relevant for a witness to give a verbal description, *Terry v. State*, 491 S.W. 2d 161, 163 (Tex.Crim.App.1973), and the admission in evidence of photographs must necessarily rest largely in the discretion of the trial judge, and his action will not be disturbed in the absence of a showing of an abuse of discretion. *Terry*, 491 S.W.2d at 163; *Davis v. State*, 687 S.W.2d 78, 82 (Tex.App.—Dallas 1985, pet. ref'd). The doctor testified that the photograph depicted appellant with an erection. The photograph was relevant for purposes of impeaching the doctor's testimony that appel-

lant was impotent and incapable of having an erection. *Cf. Lewis v. State,* 676 S.W.2d 136, 139 (Tex.Crim.App.1984). The jury was not misled as to the timing of the picture since the doctor testified that the picture could have been taken much earlier than the occurrence of the offense with which appellant was charged. Furthermore, there was testimony in evidence, contrary to the doctor's testimony, that appellant was in fact not impotent and could have an erection. There is no error in admitting a photograph where there is testimony admitted showing the same thing. *Brown v. State,* 696 S.W.2d 913, 914 (Tex. Crim.App.1985); *Colston v. State,* 727 S.W. 2d 683, 686 (Tex.App.—Houston [1st Dist.] 1987, no pet.). After the photograph had been properly authenticated, the only objection which appellant had as to the photograph's admissibility went to its weight rather than its admissibility. *See Davis,* 687 S.W.2d at 81–82. There is no showing of an abuse of discretion by the trial judge in not admitting the photograph, and, therefore, appellant's third point of error should be overruled.

Finally, I disagree that the trial court erred in admitting evidence of the sexual conduct between the complainant and three other individuals other than appellant. The complainant testified that on each of the three occasions when she had sexual relations with the three older men, two of whom were friends of appellant, and on the other occasion a man with whom appellant was negotiating a lease of property, she engaged in the sexual intercourse while appellant was present and because appellant instructed her to do so. Each was done without her consent. On two of the occasions appellant benefitted by receiving $100 and on the other occasion he was negotiating the lease. As I view this evidence, it was admissible as part of the relevant facts and circumstances of the charged offense. *Moreno v. State,* 721 S.W.2d 295, 301 (Tex.Crim.App.1986); *Mann v. State,* 718 S.W.2d 741, 743–44 (Tex.Crim.App.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1633, 95 L.Ed.2d 206 (1987). I disagree reversible error was committed in admitting this evidence before the jury.

Appellant's fourth point of error should be overruled.

I would affirm the conviction.